[Crim. No. 14577.   Second Dist., Div. Five.   July 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD ERNEST SANCHEZ, Defendant and Appellant.

228

Frank G. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, Acting P. J.—By two separate indictments filed June 8, 1967, defendant was charged with two sales of marijuana, in violation of section 11531 of the Health and Safety Code. Case number 79604 concerns a sale at 5:15 p.m. on May 4, 1967. Case number 79605 concerns a sale at 9:15 p.m. on the same day. Defendant pleaded not guilty in both cases and the cases were consolidated for trial. After a jury trial, defendant was found guilty in each case of violating section 11531 of the Health and Safety Code.

The court then requested a report from the probation department and set a hearing date of August 28, 1967. On that date, the court noted that attached to the probation report was a written opinion of Dr. Slutzky, a psychiatrist, which concluded that defendant was mentally ill. The court thereupon declared a doubt as to defendant's present sanity. Pursuant to defendant's motion under Penal Code section

1368, criminal proceedings were suspended and Dr. Wells and Dr. Patterson were appointed to examine defendant and report to the court on defendant's mental condition. On September 11, 1967, a sanity hearing was held in which both doctors testified that in their opinion defendant was presently sane. The court found that defendant was sane and able to cooperate with his counsel.[1] Thereafter, defendant's motion for new trial was argued and denied. Probation was denied and defendant was committed to the California Youth Authority. Defendant appeals from the judgments of conviction.

The facts show that the transactions in question took place on May 4, 1967 at 5:15 p.m. and 9:15 p.m. The only factual dispute was whether the transactions were improperly initiated by persons other than defendant in an effort to entrap defendant. Feldman, a senior narcotic agent employed by the State of California, testified that he was involved in an undercover narcotic investigation in the Santa Barbara area. On May 4, 1967, at approximately 5:15 p.m., Agent Feldman was introduced to defendant by Miss Gentry, a friend of the police whose function was to introduce police to persons dealing in narcotics. In the ensuing conversation, Agent Feldman asked defendant if he had any marijuana. Defendant replied that he had eight marijuana cigarettes which he could sell to Agent Feldman for 75 cents each. Agent Feldman agreed to the price and the sale took place.

At approximately 9:15 p.m. on the same day, Agent Feldman returned to the place where he had just met defendant. Defendant approached Agent Feldman and asked Agent Feldman if he wanted to buy five cans of marijuana. After some discussion about the price, Agent Feldman agreed to make the purchase. Defendant and Agent Feldman, accompanied by Miss Gentry, proceeded to the vicinity of Castillo and De La Guerra Streets in the City of Santa Barbara in Agent Feldman's car. Defendant left the car momentarily and returned with a Mr. Chavez. Defendant asked Chavez how much marijuana he had. Chavez informed defendant and Agent Feldman that he had three cans and wanted 10 dollars for each can. When Agent Feldman objected to the price, defendant told Chavez to let Agent Feldman have the three cans for 25 dollars. This price was agreed upon and Agent Feldman gave defendant the money while Chavez went

---

[1] The record has been augmented to include the transcription of the court's finding of present sanity.

to get the marijuana. Chavez returned and handed three plastic bags of marijuana to Agent Feldman, and defendant handed the money to Chavez. Defendant was subsequently arrested by Agent Feldman pursuant to an arrest warrant.

Defendant testified to an entirely different set of circumstances leading up to the transactions. Acocrding to defendant, he was introduced to Miss Gentry by a mutual friend, Miss Duncan, approximately a week before May 4. On several occasions prior to May 4, Miss Gentry attempted to induce defendant to obtain some marijuana for her. On May 3, Miss Gentry introduced Agent Feldman to defendant as her brother-in-law and again requested defendant to obtain some marijuana. That evening defendant obtained eight marijuana cigarettes from his cousin. Later that night, Miss Gentry telephoned defendant and in response to her question stated that he obtained some marijuana. Defendant would not permit Miss .Gentry to pick up the marijuana that night. On the following day when the transaction took place Miss Gentry requested the marijuana and set the price which Agent Feldman would have to pay.

Concerning the 9:15 sale, defendant testified that Chavez called him and asked if defendant knew of anyone who wanted to buy some marijuana. Defendant told Chavez of Miss Gentry and Agent Feldman, and agreed to meet Chavez later in the evening. Defendant did not receive any of the 25 dollars from Chavez, and, in fact, was not an active participant in this sale.

Miss Duncan testified that she had introduced Miss Gentry to defendant. She further testified that Miss Gentry had offered her marijuana on two previous occasions.

Defendant contends that he was denied due process of law by the procedure employed to evaluate his mental condition. He argues that a sufficient evaluation of his mental condition could not be made on the basis of only one examination by each psychiatrist. We disagree. The record shows that both doctors submitted written reports and were examined at length by the court and defense counsel. The testimony given by both doctors indicates extensive analysis rather than perfunctory conclusions. Both doctors interviewed defendant, observed his mental functioning, reviewed his medical history, and reviewed the probation report containing Dr. Slutzky's opinion. Both doctors concluded that defendant was sane and able to cooperate with counsel and understand the nature of the proceedings against him.

■ Defendant further contends that the court erred in failing to advise him of his right to a jury trial in a section 1368 hearing. This question has been resolved adversely to defendant. In *People* v. *Hill,* 67 Cal.2d 105, 114 [60 Cal.Rptr. 234, 429 P.2d 586], our Supreme Court held: "The only right to a jury trial in a special proceeding collateral to the criminal trial is that provided by statute. But defendant contends that since he was entitled to a jury trial, upon demand, the judge should have advised him of that right. Section 1368 imposes no such duty on the judge. The defendant was represented by counsel. Unless the statute expressly so directs, there is no duty in a judge to advise a defendant of his statutory rights where he is represented by counsel." Absent a demand by defendant, a jury trial under section 1368 is not required.

We conclude that the evidence of sanity was clearly sufficient to resolve the doubt expressed by the trial judge, and that the defendant was afforded "all of the protection that section 1368 contemplates." (*People* v. *Blagg,* 267 Cal.App. 2d 598, 603 [73 Cal.Rptr. 93].)

■ Defendant next asserts that the trial court erred in not declaring a mistrial on the ground that defendant was prejudiced by his appearance before the jury, unshaven and without his hair cut. Out of the presence of the jury, defendant took the witness stand and was examined and cross-examined on this issue. The trial court denied the motion, stating: "I see nothing about this young man's appearance that would, in my opinion, be sufficient to prejudice him before this jury.

"I find also that he had an opportunity to have a hair cut and he did not avail himself of it."

The record amply supports the trial court's finding. Defendant admitted on cross-examination that he saw the barber come around but did not request a haircut because, in his opinion, the barber "wasn't giving good hair cuts." In any event, the court's conclusion that there was "nothing unkempt" about defendant's appearance will not be disturbed absent convincing evidence to the contrary.

■ Defendant next contends that he was somehow prejudiced by the fact that the court permitted the jury to view and handle the marijuana exhibits received in evidence. The exhibits were received in evidence without objection, and defense counsel did not object to the exhibits being passed among the jury. While it is difficult to see what useful pur-

pose was served by permitting the jury to handle the exhibits, it is equally difficult to perceive what possible prejudice could have resulted to defendant. Such exhibits, unlike gruesome photographs or blood-stained clothing, were not of such a nature as to inflame the passions of the jurors. We find no abuse of the trial court's discretion in allowing the jurors to handle these exhibits. (Evid. Code, § 352.)

██ Defendant next contends that the prosecutor was guilty of prejudicial misconduct in his closing argument to the jury. Among other assignments of error, defendant complains of the prosecutor's characterization of him as a ''professional pusher.'' ██ Whether a prosecutor has been guilty of prejudicial misconduct must be determined in the light of the particular factual situation involved. (*People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556].) The prosecutor may properly urge his points vigorously as long as he does not act unfairly. (*People* v. *Wein,* 50 Cal.2d 383, 396 [326 P.2d 457].) And it is settled that he may use appropriate epithets warranted by the evidence. (*People* v. *Mitchell,* 63 Cal.2d 805, 809 [48 Cal.Rptr. 371, 409 P.2d 211]; *People* v. *Ketchel,* 59 Cal.2d 503, 540 [30 Cal.Rptr. 538, 381 P.2d 394].) ██ In the present case, it would appear that the prosecutor's characterization of defendant as a ''professional pusher'' was warranted by the evidence. (*People* v. *Mitchell, supra*; *People* v. *Farrar,* 149 Cal.App.2d 362, 366-367 [308 P.2d 33].) On cross-examination, defendant testified that Miss Gentry had stated to him that she had heard that he was a pusher. The prosecutor then asked defendant what response he had made to her statement, and defendant replied, ''Rumors get around.'' At the conclusion of the second sale defendant stated that he was going on a trip and that future sales would have to be handled through Chavez. Furthermore, since the only issue in the case was entrapment, the purpose of the characterization was to emphasize that defendant, an experienced seller, was not entrapped. (Compare, *People* v. *Shaffer,* 150 Cal.App.2d 287, 293-294 [309 P.2d 475].)

██ Defendant next complains of the prosecutor's allusion to possible sales of narcotics to teenage girls by defendant. While we do not condone the prosecutor's choice of phraseology, it is clear that such comments were made to controvert defendant's claim of entrapment. Such expressions by the prosecutor sought only to convince the jury that defendant would have sold to the first customer who came along. In this respect, it is significant to note that other than Agent Feld-

man all persons involved, including defendant, were minors. Accepting the prosecutor's argument that defendant would have sold to anyone, it was arguable in view of defendant's age that any sales would most likely have been made to persons in his age bracket.

Defendant also assigns as misconduct the prosecutor's allusion to his own experience as a C.I.A. agent in dealing with "clandestine operations." Manifestly, such comment was improper. The prosecutor, as a representative of the People, is bound to refrain from making inflammatory statements and taking unfair advantage by reason of his official status. (*People* v. *Talle*, 111 Cal.App.2d 650, 676-677 [245 P.2d 633].) While the 9:15 p.m. sale could properly be characterized as "clandestine," the prosecutor's comments as to his personal experiences and training were totally irrelevant and beyond the scope of legitimate argument. As stated in *People* v. *Whitehead*, 148 Cal.App.2d 701, 706 [307 P.2d 442] : "It is always misconduct for a prosecutor to bring before a jury facts from his own experience which are not to be found in the evidence before them." The ultimate question which must be decided, however, is whether such conduct was prejudicial. (*People* v. *Beivelman*, 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913].) Since this is not a conviction on circumstantial evidence or a case that could be considered closely balanced as to defendant's guilt or innocence, we have concluded upon an examination of the entire record that a result more favorable to defendant would not have resulted absent such misconduct. (*People* v. *Lyons*, *supra*; *People* v. *Ney*, 238 Cal.App.2d 785, 803 [48 Cal.Rptr. 265].) It follows that such remarks are not grounds for reversal. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

Defendant's next contention is that it was improper for the prosecution to introduce evidence as to the quantity of marijuana involved or its effect on a user since the fact that the sales took place was not being controverted. We think that such evidence was sufficiently relevant on the issue of entrapment. The fact that defendant arranged a sale of a large quantity of marijuana, as opposed to one marijuana cigarette, is some evidence of defendant's disposition to voluntarily engage in illicit narcotic activity. While we agree with defendant that evidence of the effect of marijuana use is of dubious relevancy, we fail to comprehend defendant's circuitous logic that such evidence inevitably led the jury to

conclude that since the drugs were dangerous defendant was not a victim of entrapment. In any event, we can perceive no prejudice resulting to defendant from the introduction of such evidence.

During a recess, a juror informed the deputy district attorney that it was difficult to hear defendant's testimony. The deputy related this conversation to the trial judge. Defendant contends that the court erred in not inquiring whether the juror missed some of the testimony. This incident occurred approximately halfway through the prosecutor's cross-examination of defendant, not at the conclusion of defendant's direct testimony, as misstated in defendant's brief. Defense counsel did not request that any of defendant's testimony be re-read, and it is understandable why he did not. A reading of defendant's testimony elicited on cross-examination leaves no doubt in our mind that any missed testimony would have inured to defendant's benefit.

Defendant's final contention on this appeal is that the defense of entrapment was established as a matter of law. This would be true if the jury was compelled to believe defendant's testimony. It is not a reviewing court's function to say that conflicts in the evidence should have been resolved in defendant's favor. (*People* v. *Cisneras,* 214 Cal. App.2d 62 [29 Cal.Rptr. 146].) To the contrary, all intendments and presumptions are to be viewed most favorably in support of the conclusion reached by the trier of fact. (*People* v. *Ford,* 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132].) We are concerned only with the legal sufficiency of the evidence. (*People* v. *Smith,* 223 Cal.App.2d 388 [35 Cal.Rptr. 731].) Viewing the evidence in the light most favorable to the People (*People* v. *Winters,* 242 Cal.App.2d 711 [51 Cal. Rptr. 735]), there is ample evidence to support the verdict.

The judgment is affirmed.

Reppy, J., and Chantry, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.