**STATE of Missouri, Plaintiff-Respondent,**

v.

**Johnny RANSOM, Defendant-Appellant.**

No. 34808.

Missouri Court of Appeals,
St. Louis District,
Division No. 2.

Oct. 2, 1973.

Frederick R. Buckles, Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Karen Harper, Jefferson

City, J. Brendan Ryan, Circuit Atty., Nels C. Moss, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

·McMILLIAN, Judge.

Appellant Johnny Ransom was convicted by a jury of the Circuit Court of the City of St. Louis of operating a motor vehicle without the owner's consent, a violation of Sec. 560.175 RSMo 1969, V.A.M.S. Under the provisions of the Missouri Second Offender Act, he was sentenced to four years imprisonment. On this appeal, he contends that the State failed to prove either that he acted with criminal intent or that he had been previously convicted of a crime. We disagree and affirm.

At trial, the State offered evidence that on February 5, 1972, between 6:30 and 7:00 P.M., a Mr. Hinton left his automobile parked in front of a St. Louis record shop which he entered to make a purchase. The car was not locked, the keys were in the ignition, and the engine was running. When Mr. Hinton came out of the store, he saw an unidentified person driving off with his car. He then called the police. Mr. Hinton testified that he had not given anyone permission to operate his automobile.

Less than two hours later, at about 8:15 P.M., two St. Louis policemen saw appellant and a companion in Mr. Hinton's car, according to the officers' testimony. The officers stopped the two men, and after checking the license on the car, arrested them. The officers testified that appellant was driving the car. One officer also testified that appellant told him he had recently borrowed the car from a man named Jim. Appellant did not tell the officer Jim's last name, but he did offer to take the officers back to meet Jim for an explanation. The officers did not pursue the matter.

In his defense, appellant produced two witnesses. One testified that he drove appellant to a street corner about 3 or 4 P.M. on the date of the alleged crime. The second witness testified that he saw appellant at an apartment some eleven blocks from the street corner at about 8:30 or 9:00 P.M., some time after police reported arresting appellant. This witness said that he saw a Mr. Howard (no first name given) give appellant car keys and some papers. He said that appellant and a companion later left the apartment. On cross-examination, the second witness admitted several felony convictions and said that he was confined to the City Workhouse at the same time as appellant, just prior to trial. The witness said, however, that he did not talk to appellant about the case or about testimony he might give.

At the portion of the trial devoted to the second offender charge against appellant, the State presented testimony from a court clerk and two documents. First, a deputy clerk of the Circuit Court of Criminal Causes, St. Louis, read from the Permanent Record Book of that court a page describing a judgment of the court in a case entitled "State of Missouri versus Wilbur C. Summan and *Johnnie Ransome*" Cause No. 129–B, March 17, 1953. The defendants in the case were adjudged guilty of second degree burglary upon a plea of guilty and were sentenced to two years imprisonment. Next, the State introduced an authenticated Missouri Department of Correction record showing that a *Johnnie Ransom*, of the same age as the *Johnnie Ransome* described in the Circuit Court Permanent Record Book, served thirteen months in prison upon a conviction of second degree burglary in the St. Louis Circuit Court of Criminal Causes. According to the document the department received *Johnnie Ransom* only two days after *Johnnie Ransome* was convicted in the St. Louis Circuit Court. Finally, the State introduced an authenticated copy of a Missouri Highway Patrol Record sheet, also called a "rap" sheet, which lists all arrests of an individual in this state. According to the testimony of a police officer, this record is compiled and checked for accura-

cy on the basis of fingerprint information. The sheet showed that *Johnnie Ransome* also spelled his name *Johnnie Ranson* on March 19, 1953; *John Ransom* on July 4, 1959; and *Jonnie Ransom* on September 20, 1963. Ransome also used the name of James Reed on at least one other occasion, according to this document.

Based on this evidence, the trial court found that appellant Ransom was the same person as the Johnnie Ransome who was convicted of second degree burglary in 1953. In his defense appellant objected to introduction of the highway patrol record, but he did not offer any evidence to contradict the State's evidence.

In his first point on appeal, appellant contends that the State failed to prove that he acted with criminal intent. He asserts that the State did not present any evidence showing that he knew he did not have permission to operate Mr. Hinton's car. He also claims that this knowledge could not be inferred from the evidence which the State did present.

■ Although Sec. 560.175, RSMo 1969,[1] V.A.M.S., does not expressly require proof of criminal intent for a guilty finding for the crime of operating a motor vehicle without the owner's permission, our Supreme Court has ruled that the statute must be construed in light of the common law and that criminal intent is an essential element of the crime. The burden of proving the intent is, of course, on the State. State v. Tate, 436 S.W.2d 716, 718 (Mo.1969) (holding that intent is a necessary element of operating a motor vehicle without the owner's consent); and State v. McLarty, 414 S.W.2d 315, 318 (Mo.1967) (holding that intent is a necessary element of tampering with a motor vehicle).

■ At issue on this appeal is the quantum of evidence necessary to prove criminal intent, the *mens rea*. The wording of the statute does not require the State to show that a defendant actually stole an automobile from its owner; it only requires a showing that a defendant operated a motor vehicle *knowing* that he did not have the owner's permission. Direct evidence of this knowledge would be difficult to obtain, but on review of previous dealings with this issue, it appears that a defendant's knowledge can be inferred from circumstantial evidence. Thus, in State v. McLarty, *supra*, the defendant accompanied a known felon in the middle of the night to an empty parking lot where the two men were found tampering with an air conditioner inside an auto. The court said that the jury was not required to believe the defendant's excuse that he was trying to tighten a belt securing the air conditioner to the car. The court held that, ". . . From this evidence the jury reasonably could find that defendant willfully, unlawfully, and feloniously tampered with the automobile without the permission of its owner . . . ." State v. McLarty, *supra* at 319.

In State v. Crawley, 478 S.W.2d 344 (Mo.1972), the court held that a jury could infer criminal intent on a charge of operating a motor vehicle without the owner's permission where defendant was arrested in the vehicle five days after it was reported missing and where the vehicle bore stolen license plates. In a similar case, State v. Tate, *supra*, the court said that the jury was not required to believe defendant's evidence that he drove a stolen vehicle with the owner's consent. The court reversed a conviction in this latter case, but the issue was failure to instruct the jury properly on the element of intent. That issue is not raised by this case, since the trial court instructed the jury both on the requirement for intent and on appellant's exculpatory evidence.

■ The facts in the case before us, however, are somewhat different from

---

1. Subsection 1 of Sec. 560.175, RSMo 1969, V.A.M.S., provides as follows: "No person shall drive, operate, use or tamper with a motor vehicle or trailer without the permission of the owner thereof."

those present in previous cases in this State. The prosecution has shown only that appellant was in possession of a vehicle stolen less than two hours before. The question is whether a jury can infer from these facts that appellant knew he did not have the owner's permission to operate the vehicle. The United States Court of Appeals for the District of Columbia has offered an answer, supported by the weight of authority, which we adopt. Following that court's treatment of cases involving operating an automobile without the owner's consent, we hold that the exclusive and unsatisfactorily explained possession of property proven to have been recently stolen permits an inference that the possessor is the thief or that he has knowledge of the theft. United States v. Weston, 151 U.S.App.D.C. 264, 466 F.2d 435, 438 (1972); United States v. Johnson, 140 U. S.App.D.C. 54, 433 F.2d 1160, 1163–1164 (1970), and Pendergrast v. United States, 135 U.S.App.D.C. 20, 416 F.2d 776, 787–788 (1969). It is the function of the jury to draw or decline the inference and to accept or reject the accused's explanation of his possession.[2]

◼ The inference derived from the possession of recently stolen property is not new to Missouri law. In larceny cases, our Supreme Court has long held that the exclusive and unexplained possession of recently stolen goods is a circumstance from which the jury may infer that the possessor is the thief. See State v. Swarens, 294 Mo. 139, 241 S.W. 934, 936 (banc 1922); State v. Strait, 279 S.W. 109, 111 (Mo. 1925); State v. Chase, 444 S.W.2d 398, 402 (Mo. banc 1969); State v. Cobb, 444 S.W. 2d 408, 414 (Mo. banc 1969); State v.

Schleicher, 458 S.W.2d 351, 353 (Mo. banc 1970). The term "exclusive," relevant here because an accomplice joined appellant in possession of the car, does not mean that the possession must be separate from all others. Joint possession may give rise to the same inference. State v. Schleicher, *supra.*

◼ In the case before us, the State has shown that appellant was driving a car stolen less than two hours before appellant's arrest. From these facts, the jury could, and did, infer that appellant knew he did not have the owner's permission to operate the vehicle. The jury could also choose to disbelieve, as they apparently did, the defense witness who claimed he saw a Mr. Howard give appellant keys and papers to the car just before the arrest.

In his second point on appeal, appellant asserts that the State failed to prove beyond a reasonable doubt that he had been previously convicted of a crime. Appellant claims, in effect, that the State did not prove that he was one and the same person as the Johnnie Ransome convicted of second-degree burglary in 1953.

◼ The general rule is that while identity of names is sufficient to establish the accused's identification for the purposes of the Second Offender Act, similarity is not. In cases of partial and incomplete identity of names, there must be some additional evidence matching the accused with the person previously convicted. State v. Cook, 463 S.W.2d 863, 868 (Mo. 1971); State v. Hands, 260 S.W.2d 14, 18 (Mo.1963); State v. Baugh, 323 S.W.2d 685, 691 (Mo. banc 1959).

2. The Court of Appeals explained the background of the inference in Pendergrast v. United States, 135 U.S.App.D.C. 20, 416 F.2d 776, 787–788 (1969): "We are dealing with an inference of ancient vintage to which we, in common with a host of other courts, have extended operation in trials for offenses of which the taking of property is an essential element. The inference is indulged only where the accused is found in exclusive possession of property recently stolen and the possession is not otherwise explained. The inference is then permitted because its factual prerequisites, if competently established, support a logical deduction that the possession of the stolen property could have been acquired only by the possessor's theft of that property. To so infer 'is but to accord to the evidence, if unexplained, its natural probative force.'" (Footnotes omitted.)

In this case, the State has produced ample additional evidence to show that appellant is the Johnny Ransome convicted of second-degree burglary in 1953. A court clerk testified that *Johnnie Ransome* was convicted on March 17, 1953. A Department of Corrections document was introduced to show that *Ransome* spelled his name *Ransom* only two days after the conviction. The same record included a physical description of appellant, allowing the trial judge to compare that description with appellant in the court room. Finally, the State introduced the highway patrol "rap" sheet, which, according to testimony, is compiled on the basis of fingerprint information. This sheet showed that the *Ransome* convicted of burglary in 1953 also spelled his last name *Ransom* and *Ransome*, and his first name *Johnnie, John,* and *Jonnie*. We hold that this evidence was sufficient to sustain a finding that appellant Johnny Ransom was the same person as Johnnie Ransome, convicted of burglary in 1953. The State has shown identity of last names, and the court takes notice that *Johnny* and *Johnnie*, nicknames for *John*, are often used interchangeably.

Accordingly, judgment affirmed.

DOWD, C. J., and WEIER and CLEMENS, JJ., concur.