**STATE of Missouri, Respondent,**

v.

**Daniel Eugene STARK, Appellant.**

No. KCD 26494.

Missouri Court of Appeals,
Kansas City District.

Feb. 4, 1974.

Larry O. Denny, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Before DIXON, C. J., and PRITCHARD and SOMERVILLE, JJ.

1

SOMERVILLE, Judge.

Defendant waived a jury and was found guilty by the court of felonious possession of marijuana (in excess of 35 grams of cannabis sativa). His punishment was assessed at two years confinement in the Department of Corrections; the court rendered judgment and sentence accordingly.

Prior to trial defendant filed a timely motion to suppress the marijuana, possession of which was the core of the charged offense, on the ground that it was obtained as the result of an illegal, warrantless search. The motion was overruled at the conclusion of a thorough evidentiary hearing. At this juncture defendant and the state stipulated that the evidence heard by the court on defendant's motion to suppress constituted "the total evidence to be presented" at defendant's trial on the offense charged in the information. A jury was waived, and the case was submitted to the court per the joint stipulation. Defendant then orally moved for acquittal on the ground that "the only evidence by the State was obtained by an illegal search and seizure, and therefore inadmissible under the Fourth Amendment."

While ineptly put by defendant, his sole ground for reversal is that the marijuana in question should have been suppressed and excluded from evidence because illegally obtained as the result of a warrantless search, and, if suppressed and excluded, there was not sufficient evidence to support his conviction.

Facts pertinent and necessary to resolve defendant's single point on appeal are as follows. Sometime around 4 A.M. on the morning of September 3, 1972, Trooper Phipps of the Missouri State Highway Patrol received a call by radio from Troop A Headquarters of the Missouri State Highway Patrol in Lees Summit, Missouri, that a Ford pickup truck, believed loaded with marijuana, was southbound on Interstate Highway 29, in Platte County, Missouri. The trooper located the suspicious vehicle and radioed troop headquarters for regis-

tration information based on the vehicle's license, and, additionally, made inquiry as to the location of a Platte County sheriff's car. He was informed that two deputies of the Platte County Sheriff's Patrol were at the junction of Interstate Highway 29 and Missouri Route 291, a point south of his then present position.

Altogether Trooper Phipps followed the truck in question approximately five miles before stopping it at the junction of Interstate 29 and Missouri Route 291. During the five mile span the trooper observed the truck cross the center line "at least three and possibly more times." The trooper testified that he stopped the truck at the junction for two reasons, (1) because of the "dangerous" manner in which he observed it being driven, and (2) to inquire about its contents. He further testified that he delayed stopping the truck until it reached the junction where the deputies of the Platte County Sheriff's Patrol were located because "there was no other traffic on the roadway, and due to the circumstances of the information I had, I did not feel I wanted to stop the vehicle alone." The trooper is not to be faulted for his apprehension of stopping the truck without assistance.

After stopping the truck at the junction, the trooper inquired of the operator, who was alone in the cab and a person other than defendant, if he had an operator's license. As it turned out, the operator produced a license which had expired in 1971. The bed of the truck had a "box type cover" on it. While the operator of the truck was looking through his billfold for a valid operator's license (which he did not possess), the trooper directed a flashlight he was holding to the side of the truck's cab to determine if the name on the side of the truck corresponded with the name on the expired operator's license. While doing so, the trooper observed, by the flashlight's illumination, a green leafy substance that "appeared" to him "to be marijuana", exteriorly protruding from a "bowed" place in the "box type cover" that caused a sepa-

ration between the "box type cover" and the bed of the truck.

After the trooper observed what appeared to be marijuana exteriorly protruding from the truck, and after learning that the operator of the truck did not have a valid operator's license, the trooper ordered the operator out of the truck and placed him under arrest for (1) "failure to produce a valid operator's license", (2) "careless and imprudent driving by failing to drive on the right-half of the roadway", and (3) "investigation of possession of marijuana". After arresting the operator, the trooper, assisted by the two deputy sheriffs, proceeded to the rear of the truck and observed a blanket screening the contents of the bed of the truck. The trooper hit the bed of the truck several times with his flashlight and then said, "police officers, come out of the pickup". There being no response, one of the deputy sheriffs who was assisting the trooper jerked the blanket aside revealing two persons, one of whom was the defendant, standing in approximately seven hundred pounds of freshly cut marijuana. Defendant and the other occupant in the bed of the truck were then placed under arrest and each, as well as the operator of the truck, was charged with possession of in excess of 35 grams of cannabis sativa.

The marijuana was seized by the officers, removed from the truck, scientifically analyzed and introduced by the state to prove the charge leveled against defendant which generated this appeal.

Admissibility of the "fruits" of the search pivots on two issues, (1) the stopping of the truck, and (2) the warrantless search of the truck.

■ The subsequent erratic movements of the truck personally observed by Trooper Phipps after placing it under observation, coupled with Section 43.195, RSMo 1969, V.A.M.S., giving a member of the Missouri State Highway Patrol the right to "arrest on view, and without a warrant, any person he sees violating or whom he has reasonable grounds to believe has violated any law of this state relating to the operation of motor vehicles", justified his stoppage of the truck at the junction. The undisputed testimony of the trooper regarding the careless and reckless manner in which the truck was being driven, and the subsequent arrest of the operator of the truck for (1) "failure to produce a valid operator's license", and (2) "careless and imprudent driving by failing to drive on the right-half of the roadway" precludes any valid contention on defendant's part that stoppage of the truck by the trooper was nothing more than a ruse to search the vehicle to determine whether or not it was loaded with marijuana. State v. McCarthy, 452 S.W.2d 211 (Mo.1970).

■ Although the power of search and seizure possessed by members of the Missouri State Highway Patrol is clearly circumscribed by Section 43.200, RSMo 1969, V.A.M.S., the referred to statutory provision, nevertheless, specifically provides, in part, ", . . . the members of the patrol shall have the power of search and seizure on a public highway of this state, . . .". It is implicit, of course, in the aforementioned statutory authorization, that any search and seizure conducted by a member of the Missouri State Highway Patrol on a public highway of this state must not offend constitutional protections mandated by the Fourth Amendment. The search and seizure involved in this case was not constitutionally offensive.

■ Immediately after stopping the truck, and during the course of making reasonable inquiries of the operator as to the status of his operator's license, the trooper observed what appeared to him to be marijuana exteriorly protruding from the truck. When this observation was made by the trooper, the truck was stopped on a public highway and it was approximately four o'clock in the morning. Under the facts and circumstances existing, the trooper had every legal right to "eyeball" the truck from front to rear, and from side to side, and his discovery of what appeared

**4**

to him to be marijuana while doing so fell within the "plain view" doctrine and did not constitute a search proscribed by the Fourth Amendment. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968); Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L. Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); and State v. Hawkins, 482 S.W.2d 477 (Mo. 1972). The fact that the trooper used a flashlight does not taint what he could have lawfully observed in broad daylight under the "plain view" doctrine. The "plain view" doctrine does not lose its legal efficacy at sunset simply because artificial light is substituted for natural light. State v. Cobb, 484 S.W.2d 196 (Mo. banc 1972); State v. Hawkins, supra; and State v. Brown, 476 S.W.2d 519 (Mo.1972). Otherwise, the "plain view" doctrine would constitute a legal absurdity. At this point of time, even though a fullbloom search and seizure had not yet occurred, the trooper, under legally exonerating circumstances, had observed what appeared to him to be marijuana exteriorly protruding from the truck. At the moment the trooper observed what appeared to him to be marijuana exteriorly protruding from the truck, together with the previous information received that the truck was believed to be loaded with marijuana, he immediately became vested with "probable cause" to believe that the truck contained a substance which offended against the law, thus justifying a warrantless search of the truck and seizure of its legally offending contents. The Supreme Court of the United States, in view of the quick and easy mobility of motor vehicles, has long recognized that a warrantless search of a motor vehicle and seizure of any legally offending contents is permitted if an officer has "probable cause" to believe that it contains a substance which offends against the law. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct.

1975, 26 L.Ed.2d 419 (1970). The Supreme Court of Missouri has, likewise, upheld the validity of warrantless searches of motor vehicles and seizure of any legally offending contents upon a showing of "probable cause" that the vehicle contained a substance which offended against the law. State v. Hornbeck, 492 S.W.2d 802 (Mo.1973); State v. Hohensee, 473 S.W.2d 379 (Mo.1971); and State v. Edmonds, 462 S.W.2d 782 (Mo.1971).

This court refuses to dignify the faulty and careless loading of the marijuana in question into a constitutional escape from retribution. Judgment affirmed.

All concur.