STATE of Missouri, Respondent,

v.

Harold D. GOODMAN, Appellant.

No. KCD 27937.

Missouri Court of Appeals,
Kansas City District.

Dec. 31, 1975.

Thomas M. Larson, Public Defender, E. L. Messina, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WASSERSTROM and SOMERVILLE, JJ.

WASSERSTROM, Judge.

The jury found defendant guilty of driving a motor vehicle without the owner's consent, in violation of § 560.175 RSMo 1969. On this appeal, defendant challenges the sufficiency of the State's evidence to show the requisite criminal intent and he complains of the trial court's denial of a continuance.

I.

The evidence showed that the car in question was owned by Mrs. Lola McCoy and was used by her nephew, Mr. Jerry McCoy. Jerry McCoy parked the automobile in front of his home shortly after 4:00 p. m. on November 29, 1974. When he went out to use the car at approximately 6:00 p. m., he found it missing. He called Mrs. McCoy who in turn reported the disappearance to the police.

A description of the automobile was broadcast, and Police Officer Robinett observed the automobile parked at a convenience store at about 10:00 p. m. that same evening. Robinett blocked the driveway with the police car and then proceeded to the McCoy automobile in which defendant was in the driver's seat. Robinett noticed that the ignition was punched out, with wires hanging under the dashboard. Jerry McCoy testified that the ignition was intact and in working condition at the time he parked the car at 4:00 p. m. Mrs. McCoy testified that she had never given defendant permission to drive the car and that, in fact, she did not know him at all. Robinett testified that immediately after being arrested, defendant stated to him that he had just purchased the car at a tavern.

The foregoing evidence made out a submissible case. Criminal intent is an essential element for a conviction under § 560.175, and this requires a showing that defendant operated the motor vehicle knowing that he did not have the owner's permission. Such knowledge may be inferred from circumstantial evidence; and the necessary inference may be drawn from defendant's exclusive and unsatisfactorily explained possession of property proven to have been recently stolen. *State v. Ransom,* 500 S.W.2d 585 (Mo.App.1973) and cases therein cited. That permissible inference is greatly strengthened in the present case by the evidence of the punched out ignition and the twisted wires hanging below the dashboard. See *State v. Crawley,* 501 S.W.2d 31 (Mo.1973).

Defendant argues that the inference permissible from "unsatisfactorily explained possession" does not apply here for the reason that he did give Officer Robinett an explanation. It has long been settled by the decisions of this State that not every "explanation" given by a defendant serves to defeat the inference mentioned. The jury is privileged to disbelieve the explanation offered by the defendant, and if so disbelieved, then defendant's possession stands unexplained. *State v. Denison,* 352

Mo. 572, 178 S.W.2d 449, 454 (Mo.1944); *State v. Kennedy,* 396 S.W.2d 595, 598 (Mo. 1965); *State v. Moore,* 501 S.W.2d 197, 200 (Mo.App.1973); *State v. Benfield,* 522 S.W.2d 830, 833 (Mo.App.1975).

## II.

Immediately prior to the selection of the jury, defendant's counsel orally requested a continuance in order that defendant might shave and obtain a change of clothing. The record does not make the situation entirely clear, but it appears that defendant had been arrested the night before on an ordinance violation entirely different from the crime here on trial and he had been lodged in the city jail. The only showing in support of defendant's application for continuance was the following unsworn testimony of the defendant:

"Q. Defendant has been in the City Jail for at least overnight, I believe; when were you arrested?

A. Last night.

Q. How long have you been in jail?

A. About 12 or 13 hours, probably.

Q. Have you been allowed to sleep during that period?

A. Well, I was allowed to sleep, yes; but couldn't sleep.

Q. And when they called you over to Court, did they offer you an opportunity to shave at all?

A. No. I wasn't allowed no phone calls. When I tried to call, I knew I was supposed to be here at 9:00 o'clock this morning to Mr. McBurney's office, if it was possible for me to get here. I couldn't call them."

The State objected to the continuance, the prosecutor stating: "First of all, the defendant is not in jail garb, he is in city clothes. In fact, he is dressed quite adequately. The fact that he didn't shave, I don't believe is anything prejudicial. He has a light beard, and it is not that noticeable at all." The court then overruled the

application for continuance and stated his reasons as follows:

"The Court notes that the costume, of [sic] the garb, is ordinary sort of garb, no problem about it. As far as the shaving, it is apparent in that he stands immediately before the bench, that he has not shaved this morning; but it wasn't obvious when he was sitting at the counsel table."

■ Defendant's oral motion for continuance failed to comply with Rule 25.08. *State v. Boykins,* 399 S.W.2d 70, 73 (Mo. 1966); *State v. Yeokum,* 516 S.W.2d 535 (Mo.App.1974). However, we prefer to rule this point on a more fundamental basis, by answering defendant's argument on the merits.

■ Defendant contends that the denial of a continuance forced him to go to trial with an unkempt appearance, thereby prejudicing him in the eyes of the jury. In support of that position he relies upon cases which hold that it is basically unfair to require a defendant to go to trial clothed in prison garb; and defendant urges that rule should be extended to the present situation. Preliminarily it should be mentioned that the rule pertaining to prison garb is not nearly so clear cut as defendant would have it appear. The cases are far from uniform in establishing an inflexible rule that requiring a defendant to go to trial in prison garb automatically constitutes reversible error. A number of decisions hold that such facts do not necessarily result in prejudice. *Lenhart v. State,* 503 P.2d 918 (Okl. Cr.1972); *Alexander v. State,* 493 P.2d 458 (Okl.Cr.1972); *Atkins v. State,* 210 So.2d 9 (Fla.App.1968), cert. den. 396 U.S. 859, 90 S.Ct. 128, 24 L.Ed.2d 111. The federal circuit courts of appeal differ in their approach to the question. Compare *Anderson v. Watt,* 475 F.2d 881 (10th Cir. 1973) with *Brooks v. State of Texas,* 381 F.2d 619 (5th Cir. 1967); *Hernandez v. Beto,* 443 F.2d 634 (5th Cir. 1971); *Bentley v. Crist,* 469 F.2d 854 (9th Cir. 1972); and *Gaito v. Brierley,* 485 F.2d 86 (3rd Cir. 1973). Missouri has no

decision on this point although the Missouri Supreme Court stated by way of dictum in *State v. Johnson,* 499 S.W.2d 371, 374 (Mo. 1973) that "defendant has a right to be present during his trial in civilian clothing * * *." This problem concerning prison garb is presently before the United States Supreme Court and may receive a definitive answer in *Estelle v. Williams,* No. 74-676, argued October 7, 1975.

Whatever the rule may ultimately be with respect to forcing a defendant to trial attired in prison garb, even an inflexible rule denying such a practice would not apply in the present case. The rationale of the cases prohibiting prison garb in court is that making the defendant go to trial so attired violates his presumption of innocence. Here, however, the defendant appeared in court in his regular street attire. Since defendant went to trial in the present case in his usual civilian clothes, the rationale of the prison garb cases simply does not apply.

Moreover, there is a sharp distinction readily recognized between prison attire as compared to civilian clothes. Any court could immediately grasp that difference and apply a fixed rule prohibiting the prison garb. On the other hand, if the court were to be required to deal with differentiating between the appropriateness of various kinds of civilian clothes and as to whether a defendant at a given time is sufficiently clean shaven, the questions would evolve into infinite gradations. Certainly the defendant's appearance in a given situation might be so deplorable that forcing him to trial in that condition would be fundamentally unfair. Whether or not the particular case is of that character must of necessity become a matter of sound judicial discretion rather than the subject of an inflexible rule of law.

The trial judge, compared to an appellate court, has a vastly superior position for the exercise of that discretion. In this case, the trial judge not only could observe the defendant's appearance, but he preserved his observations and conclusions in the record

for the purpose of appellate review. Since there is no convincing evidence to the contrary, the trial court's conclusion that there was nothing prejudicial in the defendant's appearance will not be disturbed. *People v. Sanchez,* 275 Cal.App.2d 226, 79 Cal.Rptr. 781, 785 (1969).

Affirmed.

All concur.