STATE of Missouri, Respondent,

v.

George PARKS, Appellant.

No. KCD 28839.

Missouri Court of Appeals,
Kansas City District.

June 27, 1977.

Motion for Rehearing and/or Transfer
Denied Aug. 5, 1977.

Bruce W. Simon, Simon, Simon & Katz, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

SWOFFORD, Presiding Judge.

The appellant (defendant) was charged with tampering with a motor vehicle and with the possession of marihuana in excess of 35 grams. In the court below, he was found guilty of the tampering charge (Section 560.175 RSMo 1969) and not guilty of the marihuana charge, by the trial court, sitting without a jury. He was sentenced to three years in the custody of the Missouri Department of Corrections and this appeal followed.

The defendant raises two points or assignments of error upon which he seeks reversal of his conviction. Resolution of these points requires a brief summary of the evidence.

On the night of July 21, 1975 or the early morning of July 22, 1975, a 1975 Cadillac Eldorado convertible automobile disappeared from the car lot of Galen Boyer Motors in Independence, Missouri. It was light blue in color with a convertible dark blue top and blue interior. The serial number of this vehicle was F6L67S5Q279979. On July 22, 1975, Mr. Willis Giffin, sales manager of the Galen Boyer Motors, reported this vehicle as stolen, to the Independence, Missouri Police Department, giving a full description of the car, including the serial number.

On August 4, 1975, Charles Conyers, a detective assigned to the Criminal Investigation Unit of the Independence Police Department, received a telephone call from an unknown person that the automobile which had been stolen could be found at a certain location in Kansas City, Kansas. The informant gave him a description of the car but the police of that city did not locate it at the place given. On August 7, 1975, Conyers received another call from the same informant, advising him that the car was in the parking lot of Goodwill Industries between 17th and 18th Streets on Campbell Street in Kansas City, Missouri. He immediately advised Detective Willie Pinkston of the Kansas City, Missouri police department and made arrangements to meet Pinkston in that vicinity. Conyers gave Pinkston a complete description of the car, including the serial number.

Detective Pinkston went to the parking lot and found a Cadillac automobile, unoccupied, answering the exterior and interior descriptions given him by Conyers. Pinkston then checked the serial number and found it identical with that of the Boyer

Motors Cadillac. The location of the serial number on the car is not made clear in the record.

After Conyers had joined Pinkston, they set up surveillance of the Cadillac and after about four hours the defendant and a woman companion approached the car, entered it and drove away, the defendant operating the vehicle. Conyers and Pinkston followed the Cadillac in their separate police cars and after a short distance, with the assistance of a marked police vehicle of the Kansas City police department, stopped the Cadillac and placed the defendant and his companion under arrest.

Conyers thereupon opened the door on the driver's side and turned off the ignition but did not remove the keys. He thereupon sealed the car doors and windows and ordered it towed to the Independence police station. The car was later returned to Galen Boyer Motors, the owner. Upon further examination of the keys, it was found that they were not the standard Cadillac car keys, which were marked with "GM" on one side and the Cadillac crest on the other. The keys used by the defendant did not have these markings.

At the time of his arrest, the defendant told the officers that he was "buying" the car. He did not testify in his own behalf but offered the testimony of Rosemary Middleton.

Her testimony was at best confusing and conflicting, but it purported to show that on July 25, 1975, which was three days after the discovery that the Cadillac was missing from the Galen Boyer lot, she was at an apartment at 3733 Paseo in Kansas City and saw the defendant and one Leroy Pool, who said he was a "wholesale car dealer", and the defendant in conversation, saw them sign a paper, identified as Defendant's Exhibit No. 8, and saw the defendant give Pool $700.00. Pool did not testify and was not further identified.

The parties to this appeal have not seen fit to comply with the provisions of Rule 81.15, which requires all exhibits to be filed with the clerk of this court on or before the day the case is set for hearing, although admonished to do so in the printed docket and subsequently by letter. Such neglect constitutes not only disregard of the clear mandate of the rule but lack of respect for this court, and would justify summary action. The time must come when the case load of the appellate courts will require such action, even in criminal cases.

It appears from the record, statements of counsel and of the trial court, that Defendant's Exhibit No. 8 was a purported Bill of Sale for an automobile bearing a different serial number than the one here involved, and the court reluctantly received it into evidence "for whatever it was worth".

Neither Conyers nor Pinkston had a warrant for the arrest of the defendant nor for the search of the automobile.

The defendant's first point on appeal is that the court erred in "failing to suppress the automobile and the evidence concerning the automobile as the seizure of the same was accomplished without warrant and without probable cause", in derogation of his constitutional rights. It should be noted that the basis of this complaint, as stated in defendant's first assignment of error, is the warrantless *seizure* of the automobile and not any subsequent *search* thereof.[1] However, the defendant, in the argument portion of his brief on his first point, asserts that the act of Detective Pinkston initially, while the Cadillac was in the Goodwill parking lot, and of Officer Conyers subsequently, after the car was taken into police custody, of checking the registration or serial number, were acts of search in violation of his rights.

The first point lacks validity for a number of reasons.

■ The proof conclusively established that the automobile was stolen from Galen

---

1. The search conducted by a police technician disclosed that the car contained approximately 150 grams of marihuana. The defendant was charged with the crime of its possession, as above noted, but was acquitted by the trial court of the charge, and therefore the constitutionality of the search of the interior of the car is not involved in this appeal.

Boyer Motors; there was sufficient justification for the court to find that defendant failed to advance a satisfactory or reasonable explanation of his possession of it; and, he therefore lacked sufficient possessory or proprietary interest in it to acquire requisite standing to contest its seizure or "search". *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 1569 [1, 2], 36 L.Ed.2d 208 (1973); *State v. Bates*, 540 S.W.2d 161, 164–165 [1] (Mo.App.1976), and cases cited therein; *State v. Thompson*, 490 S.W.2d 50, 51–52 [1] (Mo.1973).

Further, the constitutional propriety of a warrantless search and seizure must be determined upon the facts of each case. While warrantless searches and seizures are constitutionally offensive, they are definite and well-recognized exceptions which cleanse them from such blight. *State v. Peterson*, 525 S.W.2d 599, 603 [1, 2] (Mo. App.1975).

Two of these exceptions are where a search or seizure is conducted where "probable cause" exists and where they occur incident to a lawful arrest. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *City of Kansas City v. Butters*, 507 S.W.2d 49, 53 [2, 3] (Mo.App. 1974); *State v. Stark*, 506 S.W.2d 1, 3–4 [2, 3] (Mo.App.1974). Again, whether a search or seizure falls within either of these exceptions depends upon the facts of such case.

■ Here, Conyers and Pinkston had a complete description of the stolen Cadillac which matched the car found in the Goodwill parking lot. To make positively sure, Pinkston checked the serial number. After the arrest of the defendant and seizure of the car, Conyers also made this verification. Whether or not the checking of the number constituted a "search" need not and is not here decided. There was certainly probable cause for this police action by Pinkston, and Conyers had probable cause to repeat this and seize the vehicle incident to the arrest of the defendant.

■ The defendant strongly asserts that a warrant should have been obtained during the several hours that the officers had the car under surveillance. It must be recalled that during this period they had no knowledge as to who had been driving the car, who would take physical possession of it, how many persons they might be called upon to confront, or when. They were maintaining the surveillance over a stolen vehicle, then established as an object which "offended against the law". Such actions, under the circumstances of the case, were justified and not unreasonable. The actions of the officers were constitutionally permissible. The defendant's first point is ruled against him.

The appellant's second point charges the trial court with error in denying his motion for acquittal as there "was no evidence to sustain the proposition of guilt because there was no evidence of criminal intent by appellant, who was operating vehicle under color of Bill of Sale."

■ There can be no dispute that criminal intent is a necessary element of the crime for which defendant stands convicted. Under Section 560.175 RSMo 1969, the intent required a showing that the defendant operated the Cadillac knowing he did not have the owner's permission. *State v. Ransom*, 500 S.W.2d 585, 587 [1] (Mo.App.1973); *State v. McLarty*, 414 S.W.2d 315, 318 [5] (Mo.1967). The intent here, as in many other crimes, may be shown by circumstantial evidence. *State v. Crawley*, 501 S.W.2d 31, 32 [2] (Mo.1973). As the court said in *State v. Ransom*, supra, at l.c. 588 [3]:

"* * * we hold that the exclusive and unsatisfactorily unexplained possession of property proven to have been recently stolen permits an inference that the possessor is the thief or that he has knowledge of the theft. * * * [5] In the case before us, * * * appellant was driving a car stolen less than two hours before appellant's arrest. From these facts, the jury could, and did, infer that appellant knew he did not have the owner's permission to operate the vehicle. * * * *"

See also: *State v. Goodman*, 531 S.W.2d 777, 778 [2] (Mo.App.1975).

■ The trier of the facts, here the trial court, could draw the inference of criminal intent from the facts and circumstances shown by the state.

The defendant here attempted to "explain" his possession of the stolen Cadillac through the testimony of Rosemary Middleton and Defendant's Exhibit No. 8. In *State v. Ransom*, supra, at l.c. 588 [5], the court said,

" * * * The jury (here, trial court) could also choose to disbelieve, as they apparently did, the defense witness who claimed he saw a Mr. Howard give appellant keys and papers to the car just before the arrest." (Statement in parenthesis supplied)

It is equally obvious in the case at bar that the trial court did not believe the explanation proffered through the Middleton testimony. Under this state of the record, the defendant's possession of the stolen car "stands unexplained". *State v. Goodman*, supra, at l.c. 778. See also: *State v. Benfield*, 522 S.W.2d 830, 833 [5] (Mo.App.1975). The defendant's criminal intent was supported by the evidence and the court did not err in failing to sustain the motion for acquittal.

The two authorities relied upon by defendant on this point are inapposite.

The judgment is affirmed.

All concur.