STATE of Missouri, Respondent,

v.

Curlee WILLIAMS, Jr., Appellant.

No. 40233.

Missouri Court of Appeals,
Eastern District.

July 31, 1979.

Allen I. Harris, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

REINHARD, Presiding Judge.

Defendant appeals from a conviction by a jury of the offense of operating a motor vehicle without the consent of the owner. He was sentenced by the court under the Second Offender Act to serve a term of three years in the Department of Corrections.

The victim testified she was a secretary, and that although she resided in Arkansas, her employment required that she occasionally work in the City of St. Louis. When in St. Louis, she customarily stayed at the Missouri Athletic Club, and it was from the Club parking lot during such a visit to St. Louis that her auto was stolen during the night of November 12, 1976. She had left the keys to the car, a 1976 Oldsmobile, in the car as required by the Club's parking lot procedure. Upon discovering the auto missing the following morning, she notified the police. She also stated that although the auto was titled in her husband's name, it was in fact her car, that she enjoyed exclusive use and control over it, and that she had given neither the defendant nor any other person permission to operate the vehicle on November 12 or 13 of 1976.

The investigating officer, Sgt. Brocato, testified that prior to this incident the police learned that one Anthony Busby, a former employee of the Club, had boasted that a car could easily be stolen from the Club parking lot. Acting on this information, Brocato proceeded to what was believed to be Busby's residence at 2118 Mullanphy accompanied by two other plainclothes officers. Discovering an automobile fitting the description of the stolen vehicle parked near the 2118 Mullanphy address, the officers carried out a brief but fruitful surveillance. Shortly after their arrival, the defendant departed from 2118 Mullanphy, entered the auto and drove off. Upon his apprehension by the officers, defendant claimed that one George "Wilson" or "Watson" had lent him the car for the purpose of picking up Watson/Wilson's sister, and defendant would be repaid certain funds loaned him by defendant. Although defendant claimed Watson/Wilson lived at the Mullanphy address, no persons at that address or in the immediate neighborhood had any knowledge of a George Wilson or Watson.

Defendant testified that he had been walking through the area in which he was apprehended when he encountered an ac-

quaintance named "George", and whose last name was "Watson or Wilson, I believe", working on an auto in the street with certain other persons. "I asked him if he had any money," defendant stated, because "he owes me." Defendant claimed that he had loaned Watson/Wilson money on several occasions, but that he was not certain of the exact amount, "maybe around 8 or 9 dollars." Defendant further stated that Watson/Wilson had no money, and instead gave defendant the keys to the Oldsmobile, saying it was his car, and directing defendant to pick up and bring back Watson/Wilson's sister who was waiting on a certain street corner in another part of town. Watson/Wilson indicated that the sister would pay defendant the money owed him upon her return. Defendant also claimed that he did not know Anthony Busby. However, Sgt. Brocato returned to the stand for the purpose of rebuttal to testify that defendant had been confronted by Busby at the police station after his arrest and that defendant then admitted knowing Busby, but denied that Busby was the person who had given him the keys to the Oldsmobile.

■ On appeal, defendant claims that the state failed to make a submissible case by virtue of a failure of proof as to the elements of lack of consent of the owner, and of defendant's intent to operate the vehicle without such consent.

On the issue of lack of consent, defendant notes that the title owner did not testify at trial by virtue of which omission there was no evidence that the owner did not give his consent to defendant's operation of the auto. This contention is without merit. The victim testified that she had exclusive use and possession of the car, although titled in her husband's name. A similar situation was presented in *State v. Ward*, 571 S.W.2d 773 (Mo.App.1978), where the victim testified that although the title to the auto there in question was in a corporation, the corporation had furnished him the auto for his exclusive use. We there held that "it is not necessary that the owner testify to lack of permission if there is evidence of a lack of permission from another source," *State v. Ward, Id.* at 775.

In addition, we may also consider defendant's own testimony on the issue of lack of consent, *State v. Ward, Id.* at 775. That testimony, to the effect that only Watson/Wilson had given him permission, itself establishes lack of consent of the true owner.

Regarding the element of defendant's intent to operate the vehicle without consent, defendant maintains that his claim that he honestly believed the auto belonged to the elusive Wilson/Watson was ineffectively controverted by the state's circumstantial evidence.

In *State v. Ransom*, 500 S.W.2d 585 (Mo. App.1973) we noted that direct evidence of intent, a mental state, could seldom if ever be presented, and held at l.c. 588:

"exclusive and unsatisfactorily explained possession of property proven to have been recently stolen permits an inference that the possessor is the thief or that he has knowledge of the theft."

In *State v. Goodman*, 531 S.W.2d 777 (Mo.App.1975), the defendant argued that the inference raised by an "unsatisfactorily explained possession" does not apply where he offered his own explanation of his possession. The court there noted at 778, "It has long been settled by the decisions of this State that not every 'explanation' given by a defendant serves to defeat the inference mentioned. The jury is privileged to disbelieve the explanation offered by the defendant, and if so disbelieved, then defendant's possession stands unexplained."

Here, the defendant claimed permission was extended by someone living at the Mullanphy address. Nobody at that residence or in the neighborhood had ever heard of Watson/Wilson, nor was he ever located despite the fact defendant claimed he had just encountered him working on a car, immediately prior to his arrest. Defendant maintains that such a person a Missouri resident and unable to repay a few dollars by defendant's own account, owned an expensive late model Oldsmobile with Arkansas plates. The defendant altogether failed

to postulate a reasonable theory of innocence, and the jury was unquestionably entitled to disbelieve him.

 Finally, defendant contends: "The court erred in failing to sustain defendant's objection in closing argument, as to the significance of a possible untruth told by defendant, and said failure to sustain objection allowed for the state to misdirect the jury as to the law of the case." Although defendant fails to identify in his argument what portion of the state's closing argument he finds objectionable, we assume he is referring to the prosecutor's comment on defendant's disclaimer of knowing Busby and the subsequent proof that the disclaimer was a lie.

We have examined the record carefully and find nothing improper in the prosecutor's comments. There was no "misdirection" of the jury as to the law of the case. At most, this was a comment by the prosecutor on the credibility of the defendant, which he was entitled to make. There was no prejudicial error in overruling defendant's objection.

Affirmed.

GUNN and CRIST, JJ., concur.