STATE of Missouri, Respondent,

v.

William C. NEWELL, Appellant.

No. 55523.

Supreme Court of Missouri,
Division No. 1.

Jan. 11, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 8, 1971.

John C. Danforth, Atty. Gen., J. Michael Jarrard, Asst. Atty. Gen., Jefferson City, for respondent.

Samuel T. Vandover, Asst. Public Defender, Clayton, for appellant.

HOUSER, Commissioner.

William C. Newell, found guilty of burglary second degree, § 560.045, V.A.M.S., and sentenced to 5 years' imprisonment, has appealed. On his behalf the Assistant Public Defender of St. Louis County filed a brief on appeal raising five procedural points. We reverse and remand on the basis of Point III which suggests error in denying Newell his constitutional right to confront and cross-examine his accusers reserved to him under Art. I, § 18(a), Constitution of Missouri, 1945, V.A.M.S., and the Sixth and Fourteenth Amendments to the Constitution of the United States.

On direct examination Leonard Endicott, a detective, testified that after Newell's arrest he talked to Newell at the city holdover; that after introducing himself he informed Newell of his Miranda rights and interrogated him after ascertaining that Newell understood his rights and would answer questions. The record follows, Endicott testifying:

"Q What did you ask him, if anything?

"A I told him I was there with regard to a burglary that occurred on Waldron in University City on January 23rd, whereby he and a fellow by the name of Sylvester Kennon had participated in a burglary; he stated he didn't know anything about it. I told him we had talked to Mr. Kennon and Mr. Kennon had told us Newell picked him up at his home in a car, they drove around, wound up in University City and parked the car, got out and Newell took a large screwdriver with him out of the car, walked to the side door of a house—

"MR. VANDOVER: If I may ask, who is saying this?

"A Sylvester Kennon.

"MR. VANDOVER: Your Honor, I would like to approach the Bench at this time.

"THE COURT: Very well.

"(OUT OF THE HEARING OF THE JURY):

"MR. VANDOVER: I am going, at this time, to object. I would have objected sooner, but I misunderstood the testimony, as I thought this is what he was relating that defendant had told him, but now I understand it to be that this is what the officer says Sylvester Kennon told him as to the part played by the defendant in this particular burglary, in which case this is hearsay, highly prejudicial and violative of the doctrine laid down in Bruton versus United States, which is about two years old. In effect it is permitting a person not present in the courtroom to testify against my client and to that I am objecting.

"THE COURT: Said objection is overruled for the reason that the witness is recounting what he, the witness, told the defendant in this interrogation room, and in the course of that he's telling the jury

what he told the defendant that Sylvester Kennon had previously said. That is not hearsay under that rule.

"MR. VANDOVER: Your Honor, may I say what that case held?

"THE COURT: I think I know.

"MR. VANDOVER: There is no sense in my telling you, then.

"(BEFORE THE JURY):

"THE COURT: Before we pick up the account of the interrogation I would like to ask Officer Endicott this question. Am I right in my understanding that you are relating what, at the time of the interrogation, you told the defendant as to a prior conversation you had had with Sylvester Kennon?

"A Yes, sir.

"THE COURT: All right. You may continue.

"MR. WEYERICH: Q. What else did you tell the defendant William C. Newell at this time?

"A We told him—

"THE COURT: Not what 'we'—

"A I told him Kennon had told me he and Kennon—Kennon and Newell had gone into University City and parked the car Newell was driving. They got out, Newell took a large screwdriver with him, they walked to the side of the house, Newell used the screwdriver to jimmy the door, they both went in, ransacked the house and took articles. I told him part of the items had been recovered by the St. Louis police. Part were missing. There was a watch, a stereo, a sewing basket still missing. Kennon informed me—

"MR. VANDOVER: There, again, I object to what Kennon said.

"THE COURT: The way it is phrased I sustain the objection."

Kennon's statement was made two or three days after the commission of the crime, and not in the presence of Newell. Kennon did not testify in Newell's case.

In this situation we sustain Newell's contentions that the effect of Endicott's testimony was to permit Sylvester Kennon, who was not in court and therefore not subject to cross-examination, to accuse Newell as a coparticipant in the crime; that after a common enterprise is ended no joint actor is permitted by any subsequent act or declaration of his own to affect the others; that the foregoing evidence was not introduced as evidence of probable cause for the arrest of Newell, but as affirmative evidence of his guilt (Newell having been arrested in the company of Kennon and items identified as stolen in the burglary having been found in Newell's possession); that the constitutional right of confrontation is to afford an accused an opportunity to cross-examine his accusers to test the credibility of their assertions, a right denied by permitting Kennon to accuse Newell through the testimony of Officer Endicott.

■ Under well-established principles the admission in evidence of the statements and declarations of Kennon, an alleged coparticipant in the burglary and stealing, made to Officer Endicott, out of the presence of Newell and some time after the commission of the crime, implicating Newell as a participant in the burglary and stealing, constituted reversible error. "* * * After the common enterprise is ended, whether by accomplishment or abandonment, no one of the conspirators or joint actors is permitted by any subsequent act or declaration of his own to affect the others. State v. Ross, 29 Mo. 32." State v. Chernick, Mo.Sup., 278 S.W.2d 741, 748 [5, 6]. See also State v. Chernick, Mo. Sup., 280 S.W.2d 56, 59; State v. Jaeger, Mo.Sup., 394 S.W.2d 347, 350[4]; State v. Cross, 357 S.W.2d 125, 128[10]; State v. Tripp, Mo.Sup., 303 S.W.2d 627. Newell was denied the right of cross-examination secured by the confrontation clauses of the state and federal constitutions. Detective Endicott's recital to the jury of

what Kennon told Endicott, delivered under the guise of a report of his official interrogation of Newell, demonstrated beyond question Newell's guilt of the crime alleged if what Kennon told Endicott was true. While Endicott was on the stand, subject to cross-examination on the question whether Kennon actually made the implicating confession, the jury may well have inferred not only that Kennon made the statements attributed to him but also that they were true. Kennon's statements and declarations purportedly made to Endicott went into the details of the criminal activities of Newell and Kennon; they were crucial and devastating. Since Kennon was not a witness the inference that Kennon was telling the truth about what happened could not be tested by cross-examination. Cross-examination of Endicott on whether in fact Kennon made the statements would not suffice as a substitute for cross-examination of Kennon to test the truth of the statements. Newell having had no opportunity to cross-examine Kennon with respect to the truth of the statements attributed by Endicott to Kennon, Newell's right to confront his accusers was denied him. Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934. The case of Dutton v. Evans, 400 U. S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213, decided by the Supreme Court of the United States on December 15, 1970, is not controlling, since the out-of-court statement in that case was of an entirely different nature and there were indicia of reliability warranting its admission in evidence.

Three other points raised by Newell on this appeal (relating to the propriety of questions asked on voir dire examination, the sufficiency of the evidence to support the court's finding under the Second Offender Act, and the sufficiency of an instruction) pose procedural questions not likely to reoccur on the new trial which must be ordered and therefore need not be decided. The remaining question, however, likely will arise on the new trial and will be decided now, viz., whether the court

should have suppressed certain incriminating statements made by Newell during an in-custody interrogation. Newell claims error in failing to sustain his motion to suppress and in admitting these statements in evidence, contending that the statements were obtained as a result of an illegal arrest and that there was no probable cause for the arrest, under the ruling in Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441, that verbal evidence deriving immediately from an unauthorized arrest is the fruit of official illegality and must be excluded. This raises the question whether the arrest was illegal and if so whether the incriminating verbal statements were tainted by the illegality of the arrest. The Attorney General joins issue with appellant on the question whether probable cause existed for the arrest.

■ On the facts there is some question whether, technically, Newell was "arrested" before or after the receipt by the officers by radio of information definitely establishing probable cause to make an arrest. Although what transpired between the officers and Newell and companion on the street prior to the receipt by the officers of the radio message appears to have been more in the nature of on the scene questioning as a part of routine investigation in the performance of usual duties, i. e. a temporary and justifiable detention and not a technical arrest, we need not analyze the evidence to determine whether there was a premature arrest. This for the reason that, assuming the illegality of the arrest, the subsequently given incriminating statements became "so attenuated as to dissipate the taint," within the meaning of the language used in Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312. Although under Wong Sun incriminating oral statements by an accused may be so intimately connected with the circumstances of an illegal arrest as to become tainted and inadmissible in evidence, that case does not hold that "all oral statements are the fruit of the 'poisonous tree' simply because they would not

have been made but for the illegal actions of the police. We think the Court in Wong Sun clearly indicates the view that a statement which is shown to have been freely and voluntarily made without coercion, either physical or psychological, may be thereby purged of any stigma of illegality and the statement is admissible." United States v. Close, 4 Cir., 349 F.2d 841, and cases cited, l.c. 851. In determining whether the taint is dissipated one consideration is the proximity of the illegal arrest to the procurement of the incriminating statements. Another consideration is other occurrences during the intervening time. Thus giving the suspect warnings as to his constitutional rights would help dissipate the taint. An important consideration is the circumstances under which the arrest was made: was it illegal for technical reasons, or was there a "gross violation of legal processes"? In this case there was a 3-day interval between the time of the arrest on January 23 and giving of the incriminating statements on January 26. "At first blush [Wong Sun] would appear to require only a passing of sufficient time between the arrest and the statement for the defendant to clear and arrange his mind." Rogers v. United States, 5 Cir., 330 F.2d 535, 541. Newell admits that there was a full exposition of his constitutional rights, including his right to an attorney, and that he understood the warnings given. He does not claim that he was coerced into making an oral statement. Instead he maintains that at all times he protested his innocence and made no incriminating statement. The circumstances surrounding the arrest do not demonstrate any gross violation of legal processes. He was not subjected to any prolonged questioning or coercion of any kind. Under these circumstances the court did not err in overruling the motion to suppress, for there is ample evidence to support a finding that the in-custody statements were made by Newell voluntarily and of his own free will, without any coercion and with full knowledge of his rights; that the connection between the arrest and the statements had become so attenuated as to dissipate any taint; that the admission of the statements was not in contravention of his rights under the Fourth Amendment, and that on a new trial the statements may be introduced in evidence. Wong Sun v. United States, supra, 83 S.Ct., l.c. 419; United States v. Close, supra; Phelper v. Decker, 5 Cir., 401 F.2d 232, 237.

For the reason given the judgment is reversed and the cause is remanded.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.