**STATE of Missouri, Respondent,**

v.

**Robert S. CRAWLEY, Appellant.**

**No. 57403.**

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Charles C. Allen, Jr., Mark T. Keaney, St. Louis, for defendant-appellant.

HOUSER, Commissioner.

Robert S. Crawley appeals from a judgment convicting him of operating a motor vehicle without the owner's consent, § 560.-180, RSMo 1969, V.A.M.S., and sentencing him to 4 years' imprisonment. This appeal was taken before January 1, 1972.

Appellant's first point is that the State failed to meet the requirement that venue be established; absence of proof that the alleged crime was committed in the City of St. Louis. This omission not having been assigned as error in the motion for new trial, or called to the attention of the trial court in any manner, the point is not reviewable on appeal. State v. Leigh, 423 S.W.2d 690 (Mo.1968).

Appellant's second point is that the State failed to prove the essential element of criminal intent on the part of appellant. While criminal intent was not proved by direct evidence it was sufficiently established by the State's evidence showing the following circumstances: The vehicle, a 1963 Pontiac, was owned by Thoms Pon-

tiac Company, a St. Louis automobile dealer. It had been stolen, recovered, parked on the lot where towed-in cars are held by the police, and stolen a second time. Six days later two experienced police officers, Sergeant Murphy and Detective Schultz, observed this Pontiac unoccupied and parked on the west side of Euclid just east of a grocery store, in a no parking zone, with the motor running. This attracted the attention of the officers because of previous robberies in that area. The suspicion of a robbery was dissipated when appellant came out of the store, walking slowly, and entered the automobile in the usual manner. Nevertheless, the officers followed the automobile, which appellant drove south on Euclid, intending to give the driver a parking ticket for parking illegally. Stopped after traveling six blocks, appellant was asked to show his driver's license. Detective Schultz recognized appellant "from previous encounters." While there was no showing that Detective Schultz had knowledge of appellant's three felony convictions, including at least one conviction of operating a motor vehicle without the owner's consent, it is a fair inference that the "previous encounters" were connected with one or more of these incidents. While appellant was attempting to produce his driver's license the officers noticed that the key in the ignition switch was upright, or in the "off" position and yet the motor was still running. In normal operation when the key is in an upright position the ignition is off and the motor is not running; when the key is turned to the right the ignition is on and the motor will start. Detective Schultz tried to turn the key to the right to turn the ignition "on" but it did not operate with that key. It would not work, from which the inference could be drawn that the key was not the key for that switch; that the key, although inserted in the lock, would not turn to the right. Detective Schultz then made another test, drawing on his experience with stolen motor vehicles. He inserted his fingernail between the back of the plate bearing the serial number of the vehicle and the

door to which it was fastened. When he did so the plate "popped off" in his hand. If a serial plate is mounted on the door facing by the manufacturer it will not come off; if "just stuck on" such a plate will "usually pop off with your fingernail." As it turned out the plate bore the proper number (the same number as the confidential serial number located on the frame of the vehicle), although six days earlier, when the Pontiac was first recovered, the serial number on the plate then on the car was incorrect. Sergeant Murphy indicated to Detective Schultz that there were suspicious circumstances, and the latter informed appellant that he was under arrest for stealing over fifty dollars (car theft). The sales manager at Thoms Pontiac testified that appellant did not have permission to drive the automobile.

The foregoing evidence is sufficient to establish the element of criminal intent. See State v. Crawley, 478 S.W.2d 344 (Mo.1972), which involved this same appellant. See also State v. Edmonson, 371 S. W.2d 273 (Mo.1963) and State v. McLarty, 414 S.W.2d 315 (Mo.1967), indicating the sufficiency of the evidence in those cases to find the element of willfulness. One of the requirements of the main verdict-directing instruction in this case was a finding that appellant operated the Pontiac "willfully." "Willfully" in criminal law means "intentionally," and there is evidence in this case which, if believed, shows beyond a reasonable doubt that appellant willfully operated this Pontiac automobile without the owner's consent.

■ Appellant's third point is that he was convicted of a crime on the basis of evidence obtained in violation of rights guaranteed him under the search and seizure provisions of the state and federal constitutions. This point is without merit. In the first place, the officers did not conduct a search within the meaning of the constitutional provisions invoked. Such a search implies "a prying into hidden places for that which is concealed." Merely looking at that which is open to view is not a

search. State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688 (1951); State v. Hawkins, 482 S.W.2d 477 (Mo.1972). Merely stopping a vehicle and determining what can be observed is not a search. State v. Britton, 444 S.W.2d 465 (Mo.1969). The ignition key and the fact that the motor was running with the key in the "off" position was open, obvious and apparent. The serial plate was in plain view when the car door was opened. In the second place, if by any stretch of judicial interpretation there was a search in the constitutional sense it was justified. From the recited facts the officers had probable cause to believe that an offense had been committed or was in progress. A three-time convicted felon is stopped for illegal parking; is recognized by one of the officers "from previous encounters," under circumstances which to these experienced officers were suspicious; is operating an automobile which gives the appearance to the officers of having been "hot-wired" (a procedure by which an automobile may be started with the ignition switch turned off). Based on their experience with stolen cars they find not only this indicia of theft but also that the plate bearing the serial number is pasted on, a further hallmark of car theft. In sum these factors added up to a well-founded belief that the automobile was a stolen car. In the third place, the evidence to which appellant objects on appeal was not objected to at the trial, and therefore all objections were waived. The evidence now complained of consists of the serial plate with the serial number thereon, and a standard police department envelope containing handwriting noting the date of the arrest, the offense (car theft), and the serial number of the automobile (which was the same as the serial number of the automobile reported stolen). When this evidence was offered appellant made no objection to its admission. To the offer of the serial plate appellant's counsel said, "No objection, your honor. *We will be happy to have that in evidence.*" (Our emphasis.) When the envelope was offered appellant's counsel said, "No objection, your honor." *Volenti non fit injuria.*

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HENLEY, P. J., MORGAN, J., and DONNELLY, C. J., concur.

FINCH, J., not sitting.