STATE of Missouri, Respondent,

v.

Gary Lee REYNOLDS, Appellant.

No. 61622.

Supreme Court of Missouri,
Division One.

Dec. 15, 1980.

Joseph D. Woodcock, Aurora, for appellant.

John Ashcroft, Atty. Gen., S. Francis Baldwin, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT R. WELBORN, Commissioner.

Appeal from judgment and sentence imposed upon jury verdict finding Gary Lee Reynolds guilty of capital murder. § 565.-001, RSMo 1978.

Gary Lee Reynolds and Patricia Reynolds were married in 1972. The marriage was the first for Gary, then around 26 years of age. Patricia had children by a prior marriage or marriages.

In late 1977 or early 1978, Patricia began a relationship with Jerry Lee Reddick, who was employed at the same place as Patricia. On June 10, 1978, appellant and Patricia

separated and shortly thereafter she moved into Reddick's residence. Patricia began an action for dissolution of her marriage to Gary which was granted July 31, 1978. In the property settlement, Patricia received the house the couple had occupied at the Emerald Beach Area in Barry County.

After the separation, Gary made threats to kill Patricia and Jerry. On September 16, 1978, Patricia and Jerry went to the house at Emerald Beach to mow the yard. At around dusk, Gary drove up to the house, located on a cul–de–sac, and got out of his van, carrying a gun. Patricia, who was in the yard, told Jerry to leave. Jerry got into his pickup and drove away. As he did so he heard a shot. He drove into a driveway and got out of his truck. He heard a second shot and some bushes and leaves fell. He left on foot and some three to five minutes later heard a third shot. Jerry returned to his pickup and drove to the home of Patricia's parents, ¼ to ½ miles away. He told Patricia's mother, Mrs. Trott, that Gary had come to the house and shots had been fired. Mrs. Trott went to the Reynolds house and found Patricia dead from a gunshot wound to the head.

Gary went to a house in the vicinity and attempted to call the sheriff, but the telephone was dead. He returned to his van.

The sheriff's office received a call about the incident at around 8:30 and officers arrived at the scene at around 9:00 P.M. Gary was seated in his van when the officers arrived. They placed him under arrest. After reading Miranda warnings, the officer asked about the person who was with him. Gary replied: "Nobody else with me. There's no use looking for anyone else, but I was the one who shot her." He told the officer he had thrown the gun along the road. A 30–30 rifle was found leaning against a retaining wall by the Reynolds house.

Gary was charged with capital murder. At his trial, the state waived the death penalty. The jury found the defendant guilty of capital murder and he was sentenced to life imprisonment, without possibility of parole for 50 years. § 565.008, RSMo 1978.

On this appeal the first complaint of appellant is directed against the instructions submitting capital murder, second degree murder and manslaughter. Appellant's complaint is based upon the absence from those instructions of the punishment which might be imposed for each of the three submitted offenses. Appellant contends that, in view of the reference by the prosecutor on jury voir dire to the range of punishment for each of the offenses, the failure to include that element in the instruction caused the instruction to be "incomplete, ambiguous and confusing to the jury," thereby depriving him of his right to a fair jury trial and his liberty without due process of law and the equal protection of the laws.

The instructions given in this case followed the dictates of Section 565.006, RSMo 1978, and MAI–CR 2d § 15.00 9.a. Whether or not the prosecutor properly referred to punishment on voir dire is not the question presented by appellant's objection. Compare *State v. Olinghouse*, 605 S.W.2d 58 (Mo. banc 1980). The fact that reference had been made (without objection) on voir dire would not affect the statutory directive that the issue of guilt be submitted to the jury "without any consideration of punishment * * *." § 565.006.

Appellant had no constitutional right to have the jury assess his punishment. *State v. Morton*, 338 S.W.2d 858, 861–862[3]–[5, 6] (Mo.1960). Therefore the procedure here followed did not violate any constitutional right to a jury trial.

For the first time in this Court and without reference to it in his point relied upon, appellant attacks the constitutionality of Section 565.006 as applied to him, on the grounds that it is violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States because it singles out capital murder for special treatment with regard to instructions on penalties. Disregarding the procedural deficiencies in the assertion of this complaint, the bifurcated system for

trial of capital murder charges is an obvious response to the conditions which have recently been imposed upon the trial of such offenses. See *Gregg v. Georgia*, 428 U.S. 153, 195, 96 S.Ct. 2909, 2935, 49 L.Ed.2d 859 (1976). The problem peculiar to the trial of such charges is sufficient reason for separate legislative treatment of the punishment aspect of such cases.

■ Appellant's second point, that the evidence showed at most, murder in the second degree, is premised primarily upon his testimony regarding the incident. According to appellant, he went to the area in order to inform friends in the neighborhood that he was going to the hospital, that when he turned into the drive, Patricia started "hollering" at him and he got "madder and madder," that Patricia started to slap him shortly before the shooting and that he did not remember what happened thereafter. Appellant also relies upon his obviously self–serving negative answer to his counsel's question: "Did you reflect at any time upon taking the life of your former wife cooly and calmly?"

However, review of this allegation must be upon the evidence supporting the verdict, viewed in its most favorable light. The state's evidence showed frequently voiced threats against Patricia by appellant, his arrival at the scene of the shooting armed with a 30–30 rifle, and his emerging from his vehicle carrying the weapon and announcing his purpose to blow out the brains of Patricia and Jerry. From these facts the jury could conclude that the killing was deliberate.

■ Appellant next contends that the trial court erred in confining defendant's testimony regarding his knowledge of his wife's relationship with Reddick to a period between June 16, 1978 and the date of deceased's death. Appellant contends that evidence of earlier incidents was admissible to show his state of mind at the time of the shooting.

The difficulty with this assignment of error is that the transcript provides no basis for the complaint. The appellant testified in his own behalf. In the course of his testimony, he stated that he had first met Reddick around Christmas, 1976. When counsel asked what occurred at this meeting, the prosecution objected on the grounds that the occurrence was 2½ years before the shooting and the court sustained the objection on the grounds that the evidence was too remote to have probative value.

A conference outside the hearing of the jury ensued, in which defense counsel advised the court that he wanted to show that Patricia and Reddick were involved in an adulterous relationship in order to provide the jury with the background of his thinking process as it related to his state of mind at the time of the shooting.

The court advised counsel that it was ruling only upon the particular question of when the defendant first met Reddick and that anything that might have happened at that time was too remote to have probative value. Defense counsel stated that, if the court intended to overrule him on each of the instances, he wanted to make a continuing offer of proof.

The court responded:

"I am not saying, Mr. Wendt, I am going to sustain each and every objection as to each stage of the relationship, but if I do, then the Court will deem it as a continuing offer of proof.

"(CONFERENCE OFF RECORD)

"COURT: Mr. Wendt, I am not saying you can't show what occurred on June 24th, the date Reddick testified about, if the defendant had knowledge of that, or the middle of June which Reddick testified about, but in 1976, the Court feels that is too remote in time. If there are other objections and the Court sustains them, I will deem this to be a continuing offer of proof."

The trial resumed in the presence of the jury. Counsel asked the defendant about an occasion in 1978 when he found Pat in Reddick's company. There was an objection based upon the absence of a specific date and the court requested defense counsel to "be a little more specific." In re-

sponse to his counsel's question, the defendant eventually fixed the date as in April, 1978. Without objection, he testified that he saw Pat and Reddick come into a bar in Cassville at that time. Defense counsel then inquired whether that was the first time defendant had seen them together. The defendant responded that in December, 1977 and January, 1978, he had seen them. When the defendant began to detail the circumstances of that encounter, the prosecutor objected on the grounds of remoteness and defense counsel withdrew his question, without a ruling by the court on the objection.

The defendant then testified in some detail about the encounter at the Cassville bar in April, 1978. When defense counsel asked defendant why he left Pat and Reddick together in the bar, the prosecutor objected that the matter was too remote. The judge overruled the objection on that ground whereupon the prosecutor objected that the testimony was irrelevant. When the court told defense counsel that he would hear him on that objection, counsel said he had nothing and the court sustained the objection.

The defendant then, in response to his counsel's question, testified he saw Pat and Reddick at the Nautical Inn on Holiday Island on June 6, 1978. He testified that they left together and were gone for two hours. Counsel asked whether the defendant knew "of [his] own mind what they were doing." Objection to the speculative nature of the question was sustained when the prosecution made a nonspecific objection to further testimony about the encounter, the court inquired as to the date and when the witness fixed the date as June 6, 1978, the trial court overruled the objection.

Counsel then asked defendant about discussions with Pat about Reddick from June, 1978 to the date of her death. When counsel said: "Tell this jury about those discussions," the prosecution's hearsay objection was sustained.

This lengthy explication of what occurred at the trial demonstrates clearly that there is no basis for the complaint now voiced. The trial court sustained objection on the

ground of remoteness to a single question involving an occurrence in 1976. He advised defense counsel that his ruling related only to that particular question. The court did thereafter refer to incidents on June 24, but he did not rule that anything prior thereto would be considered too remote. In fact objection on the ground of remoteness to an incident in April, 1978 was overruled as was an incident on June 6, 1978. The record simply fails to support the error assigned.

At a hearing on his motion for new trial, defendant testified to one or two other incidents involving Pat and Reddick and in some greater detail about his suspicions and conclusions drawn from encounters about which he testified at trial. However, this testimony cannot provide a basis for a finding of error on the part of the trial court, relating, as it did, to matters not brought to the court's attention at the trial, or to the embellishment of incidents testified to, the details of which were not precluded at trial by ruling of the trial court.

Appellant's final assignment of error is based upon the trial court's failure to grant a mistrial when the prosecutor, on final argument, told the jury: "We have many, many witnesses that we have not put on the witness stand, but we have limited–." Objection was made at that point and the court sustained the objection. When defense counsel requested a mistrial, the court instructed the jury to disregard the prosecutor's statement but the request for a mistrial was refused. Here appellant contends that the prosecutor's statement was highly prejudicial and that the instruction to disregard the statement was not adequate to overcome the prejudice generated by the remark.

No authority need be cited for the generally accepted proposition that the trial court has wide discretion in controlling closing argument. Abuse of discretion may be found upon appellate review where the argument is plainly unwarranted and clearly injurious. *State v. Hutchinson*, 458 S.W.2d 553, 556[4][5] (Mo. banc 1970). Here there can be little doubt that the remark of the

prosecutor was plainly unwarranted. Although the state had called only ten of the twenty–six witnesses indorsed on the information, such fact was not a proper subject of comment by the prosecutor. The trial court obviously recognized the impropriety of the argument by promptly sustaining the objection to it and instructing the jury to disregard it.

■ Where the relief sought is a mistrial, the drastic nature of that remedy requires that it be granted "only in extraordinary circumstances where the prejudicial effect can be removed in no other way. * * This determination rests largely within the discretion of the trial judge who observed the incident and can best gauge its prejudicial effect upon the jury." *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo.1970)

■ The trial court concluded that a mistrial was not warranted. The court heard the remark in its total context. Here only the remark itself has been presented. The court acted promptly to direct the jury to disregard the remark. (In *State v. Hicks*, 535 S.W.2d 308 (Mo.App.1976), cited by appellant, the jury had the benefit of "* * * the soaking–in influence of the 15–minute recess * * *" (535 S.W.2d 313) before the trial court's instruction to disregard the highly prejudicial matter of threats, not attributed to defendant, to the state's principal witness.) There was no disclosure of what the testimony of other witnesses might have been. See *State v. Kennon*, 585 S.W.2d 525 (Mo.App.1979). In these circumstances this Court cannot conclude that the remark was so clearly injurious that only a mistrial could eradicate its effect, and thus cannot say that the trial court abused its discretion in denying such relief. *State v. White*, 440 S.W.2d 457, 460[5, 6] (Mo.1969).

Judgment affirmed.

PER CURIAM:

The foregoing opinion by ROBERT R. WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.