STATE of Missouri, Respondent,

v.

Andrew DAUGHERTY, Appellant.

No. 62207.

Supreme Court of Missouri,
Division No. 2.

March 9, 1982.

Rehearing Denied April 6, 1982.

Leonard W. Buckley, Jr., St. Louis, for appellant.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, for respondent.

MANFORD, Special Judge.

This appeal follows a jury conviction for murder first degree, § 565.003, RSMo 1978.[1] Punishment was affixed at imprisonment for life, vesting exclusive appellate jurisdiction in this court pursuant to Mo.Const.Art. V, § 3.

---

1. All statutory references are to RSMo 1978 unless otherwise noted. Juvenile-Division, Circuit Court 22nd Circuit issued its order allowing appellant to be prosecuted under general law.

Five points of error are presented which in summary allege the trial court erred (1) in the submission of verdict directing instructions; (2) in the admission of a line-up photograph; (3) in the admission of a co-defendant's statement; (4) in refusing appellant permission to comment on the range of punishment relative to all charges submitted; and (5) in instructing the jury on murder first degree when appellant was charged with capital murder.

The sufficiency of the evidence is not challenged, and the evidence supports appellant's conviction for murder first degree. Initially, appellant was charged with capital murder, burglary first degree and robbery first degree, but nolle prosequi was entered on the burglary and robbery charges.

The record revealed that the victim, Father Edward Filipiak, a priest of the Shrine of St. Joseph Catholic Church in the City of St. Louis, was observed by two friends watching television in his bedroom at about 8:45 p. m. on September 29, 1979. At approximately 11:30 p. m. the same evening, appellant and his two accomplices encountered one Valdus Turner. One of the trio attempted to sell Turner a portable TV set. This television set was identified at trial as having belonged to the victim. During this same encounter, appellant sold five bottles of soda to Turner. At approximately 8:45 a. m. the next morning, a church volunteer arrived at the church, finding the rear door open, food removed from the freezer and other items moved from their normal location. This volunteer went to the victim's living quarters and found it in disarray. She found the victim on the bedroom floor. Police were called and were later joined by a doctor who was attending mass. The doctor determined that the victim had been dead for several hours. The volunteer, in the company of police, noticed several items of personal property missing, including the TV set, an electric razor and an umbrella. Investigating officers took photographs and seized several items from the scene, including a cardboard box. The TV set and umbrella were later seized. The TV set was secured from a resident to whom one of the trio had tried to sell the set. The umbrella was secured from the residence of appellant. The umbrella and the cardboard box secured by police at the scene bore appellant's fingerprints. An autopsy showed that the victim had died from suffocation and brain hemorrhage. At the close of the prosecutor's case and following a hearing on appellant's voluntary election not to testify, the evidence closed. The jury returned its verdict, motion for new trial was overruled and appellant was sentenced in accordance with the verdict. This appeal followed.

Under point (1), appellant challenges the verdict directing instruction. Appellant argues that the three verdict directing instructions submitted to the jury improperly required the jury to find guilt where death was caused by striking and suffocating the victim, and contends that there was a "total absence of evidence of any striking by anyone or any evidence which could allow such an inference." The premise of appellant's contention is found within his brief and is best illustrated by his assertion that " . . . the jury was misled into believing that the cause of death was both striking *and* suffocating," and further, "By the interjection of the term 'striking' in the verdict directors as one of the causes of death, the jury was misled into believing that the cause of death was the result of more heinous and reprehensible conduct on the part of Appellant." The pertinent language of the instructions which appellant attacks is, "caused the death of Father Filipiak by striking and suffocating him".

The basic principle applicable to the submission of instructions is that they should not be given if there is no evidence to support them. *State v. Agee*, 474 S.W.2d 817, 820 (Mo.1971). Instructions must be supported by substantial evidence and reasonable inferences to be drawn therefrom. *State v. Cole*, 377 S.W.2d 306 (Mo.1964); *State v. Beatty*, 617 S.W.2d 87, 91 (Mo. 1981); and *State v. Fleming*, 577 S.W.2d 174 (Mo.App.1979). Instructions which are at variance with the charge or which are broader in scope than the evidence are improper unless it is shown that an accused is

not prejudiced thereby. *State v. Scott*, 534 S.W.2d 537, 540 (Mo.App.1976).

■ In addressing this contention, the testimony of the expert medical examiner who performed the autopsy becomes the most important evidentiary contribution. In addition to qualification as an expert and testimony regarding external visual examination of the victim, this expert stated:

"Q. What was on his head, Doctor?

A. He had a pillowcase over his head.

Q. Do you know who removed that pillowcase?

A. I removed it.

Q. When you removed the pillowcase, did you observe anything else?

A. Yes, he had a gag around his mouth.

\* \* \* \* \* \*

Q. All right, Doctor. After you removed his clothing, would you give us the benefit of your other visual examination.

A. He was very cyanotic. By that, I mean he was blue in color, and the blue color was due to the lack of oxygen in the blood. His fingernail beds were gray. That, again, meant lack of oxygen in his blood. He had neck vein distension; meaning the blood was not going back to his heart. He had a one inch bruise on his left chin. He had a one inch laceration of his left inner lip, the lower lip on the inner side, which was probably secondary to a tooth going through it. *Then he had a right subgaleal hemotoma—a bruise—on his head which measured eight inches, and that was in the parietal area. He had two large bruises on the anterior chest, and these were twelve inches; and then on feeling the body, he had a crushing chest injury such that ribs two through ten were fractured on the anterior portion of his chest...*

\* \* \* \* \* \*

Q. And tell us what part of the body was opened, and how it was opened, and what you found.

A. The next step ... I made an incision from ear to ear, and peeled the skin back, and removed the brain, and there on the right side *I found a very large bruise sitting in the parietal area—that's this area on the right side—and then I removed the brain, and I found a hemorrhage into the brain which was a subarachnoid hemorrhage.* The most significant thing I found was the right brain *hemorrhage.*

Q. All right, Doctor. Did you reach a diagnosis as to the cause of this man's death?

A. Yes. There are multiple causes of death. Death is a combination of suffocation secondary to a gag in the mouth, and a pillowcase over the head, *and blood on the brain.*

\* \* \* \* \* \*

Q. ... do you have an opinion based on reasonable medical certainty as to the cause of this man's death?

\* \* \* \* \* \*

A. Suffocation and hemorrhage of the brain." (emphasis added)

The foregoing establishes that the victim sustained multiple lacerations and fractures to his body. It was charged at trial that death resulted from multiple injuries, and that the actions of appellant and his accomplices produced these multiple injuries. Appellant offered no evidence, and does not advance any reasonable alternative hypothesis to these charges on appeal. The fact that the medical expert's opinion included suffocation and hemorrhage as causes of death does not invalidate other aspects of the attack as a contributing factor. The evidence established that the victim was brutally beaten and suffocated. Appellant would have this Court believe that murder by "striking and suffocation" is more heinous than murder by suffocation or murder by striking. Such argument, under the facts and circumstances of the instant case, is reduced to nothing more than sheer academic conjecture designed perhaps to suggest prejudice and with the further hope that this Court would seize upon the suggestion of prejudice and proceed to consider such suggestion without reflecting upon the evidence contained in the record. Appellant would have this Court believe that the

taking of a persons' life by another is less reprehensible if achieved by a single act as contrasted with multiple acts. Murder is inherently heinous. In such cases, as in the instant case, where the evidence reveals that the victim suffered severe multiple wounds and was suffocated, and the record on trial and upon appeal contains no viable alternative suggesting the cause of death, no prejudicial error arises from the form and substance of instructions as were submitted herein. This premise holds true no matter how absurd the academic suggestion to the contrary. There is no merit to point (1) and it is ruled against appellant.

Appellant next attacks the trial court by charging the court erred when it admitted a lineup photograph. The basis of appellant's contention is that no proper foundation for such photograph was laid prior to admission.

In criminal cases, a photograph is admissible if it corroborates the testimony of a witness, connects the accused with the offense, provides the identity of a victim, or tends to prove any material elements in the case. *State v. Jackson*, 499 S.W.2d 467 (Mo. 1973) and *State v. Foster*, 600 S.W.2d 207 (Mo.App.1980). On the question of admission, the trial court has wide discretion and that discretion will not be disturbed absent the showing of an abuse thereof. *State v. Hurst*, 612 S.W.2d 846 (Mo.App.1981). Photographs are generally held admissible if they are relevant to a material issue within the judgment of the trial court. *Hurst, supra; Holtkamp v. State*, 588 S.W.2d 183, 189 (Mo.App.1979).

Appellant contends that the lineup photograph was not properly authenticated. He specifically attacks the testimony of prosecution witness Turner. The pertinent portion of Turner's testimony is as follows:

"Q. Now, in the other lineup did you see a lineup with Browder in it?[2] I believe you testified you knew Browder?
A. Yes.
Q. How many men were in that lineup?
A. Four, I think.

Q. I'm going to show you State's Exhibits 2 and 3. Are those two pictures of a lineup?
A. Yes.
Q. Is Daugherty in either one of the lineups?
A. No.
Q. *Is Browder in any one of those two lineups?*
A. *Yes.*
Q. *Which one, sir?*
A. *This one* (indicating).
Q. *You're referring to State's Exhibit 2. What number is he in Exhibit Number 2?*
A. *Number three.*" (emphasis added)

Appellant cites *State ex rel. State Highway Commission v. Cone*, 338 S.W.2d 22, 27 (Mo.1960) in support of the proposition set forth therein that "one offering a photograph in evidence must show by extrinsic evidence that the photograph is an accurate and faithful representation of the place, person or subject it purports to portray." The Court in *Cone*, however, went further and observed, "authenticity may be established by any witness who is familiar with the scene, object or person portrayed and is competent to speak from personal observation." The Court also declared that the statement of a witness, "this is the New York Life Building" was sufficient authentication of the exhibit. In the instant case, witness Turner had previously testified that he knew Browder. This acknowledgment obviously carries with it Turner's ability to recognize and identify Browder. The authentication by Turner was valid and there is no showing of an abuse of discretion by the trial court. *Hurst, supra*. Point (2) is found to be without merit and is ruled against appellant.

Under point (3), appellant contends that the trial court erred in the admission of statements made by one Edward Browder, a co-defendant to prosecution witness Turner in Turner's apartment building "after Turner had seen Browder on the street ... earlier the same evening." The particular

2. Browder is a co-defendant.

testimony and the action taken relative thereto is as follows:

"Q. Did you get into a conversation with any of the three of them?

A. Yes.

Q. With whom?

A. Edward Browder.

Q. What was the conversation about?

A. He asked if I was interested in the T.V.

MR. BUCKLEY: Your Honor, may I approach the bench?

(Counsel approached the bench, and the following proceedings were had, out of the hearing of the jury:)

MR. BUCKLEY: Your Honor, I'm not sure what line counsel is trying to follow here, but the statements of a co-defendant would not be admissible, and counsel knows that. I'm not sure that's what he's trying to elicit.

MR. FREDERICKS: This is the res gestae, part of the crime itself; they had just taken the stuff from the church, and they are now trying to dispose of it; and cases hold you can show evidence of trying to dispose of any of the evidence taken in a crime. It's all part of the res gestae.

THE COURT: Mr. Fredericks contends that this is an exception to the Hearsay Rule or falling into the res gestae; part of the crime, itself. What, specifically, is your objection?

MR. BUCKLEY: The question calls for a statement of one of the co-defendants that's been severed in this case and is not attributable to my client.

THE COURT: In view of the facts that are in evidence at this time, I'm going to overrule the objection at this time.

MR. FREDERICKS: For the record, we're not going into any statement of Browder or Holland that were (sic) made after they were arrested, because that would be hearsay, or any statement that would have been made to other persons not part of the continuing circumstance of the crime.

THE COURT: Browder's statements and Holland's statements are hearsay. The question is: Do they fall within the exception which Mr. Fredericks pointed up, which that seems to be.

MR. BUCKLEY: It's my contention they don't. May I have a continuing objection to this line of questioning?

THE COURT: On the subject of Browder, yes. The objection will be overruled. (The proceedings returned to open court:)

Q. (By Mr. Fredericks) Now, what was the conversation between you and Browder with reference to that T.V.?

A. He asked me was I interested in purchasing a T.V.

Q. And was there some conversation back as to whether or not you were?

A. Yes.

Q. What did you say?

A. I don't know if it works or not."

In support of his argument, appellant relies upon *State v. Browner,* 587 S.W.2d 948, 955 (Mo.App.1979) for the general proposal that statements by a co-defendant are inadmissible unless they were made in furtherance of a conspiracy or as part of the res gestae. Appellant is quick to point out that he was not charged with conspiracy, nor was any conspiracy shown, and argues that in order for the res gestae exception to the hearsay rule to be applicable, the statement must be shown to have been spontaneous, citing *Harris v. Hughes,* 266 S.W.2d 763, 767 (Mo.App.1954). Appellant further relies upon *State v. Newell,* 462 S.W.2d 794 (Mo. 1971) for the proposition that "admission of Browder's statements made *after* the commission of the crime and which implicated appellant as a participant in the crime under investigation represents reversible error." *Newell* was a case involving the admission of statements to a police officer and declarations by a co-actor made two or three days after the commission of a burglary. *Newell* is distinguishable in three ways. First, in the instant case and unlike in *Newell,* the questioned statements were made, at most, within a few hours of the criminal act and preceding appellant's arrest. Second, in the instant case the statements made to Turner concerned disposition

of incriminating evidence (i.e., the television set which was identified upon trial as belonging to the victim). Third, in *Newell*, the challenged statements demonstrated clearly that the accused was guilty of the crime alleged.

 The general proposition relied upon by appellant in citing *Browner* and *Harris* fails to persuade, for it overlooks the long recognized principle by our courts that when and where two or more persons act together in the commission of an offense, the acts of either done in the furtherance of that offense can be shown. *State v. Aguilar*, 478 S.W.2d 351 (Mo.1972) and *State v. Vineyard*, 497 S.W.2d 821 (Mo.App.1973). Such acts include attempts at concealment of persons or evidence, flight and attempts to avoid exposure. *State v. Johnson*, 286 S.W.2d 787 (Mo.1956). As it concerns the fruits of a crime, this Court has declared that it may always be shown that any one of co-conspirators was in possession of fruits of the crime. *State v. Anderson*, 384 S.W.2d 591 (Mo. banc 1964) and *State v. Tripp*, 303 S.W.2d 627 (Mo.1957).

 In addition to the foregoing, the statements of Browder were probative of the existence of a joint criminal enterprise and the intent to dispose of the television set was, under the facts and circumstances, part of the res gestae of the crime committed. It has long been part of the law of our state that " 'where several persons participate in the actual commission of a crime, the acts and declarations of many of them, while so participating are admissible against all the others.' 16 C.J. page 668, Sec. 1334." *State v. Peters*, 123 S.W.2d 34, 38 (Mo.1938). *See also State v. Reich*, 293 Mo. 415, 239 S.W. 835 (1922).

In the instant case, other evidence was admitted which established the television set had been taken from the residence of the victim. The testimony of witness Turner that appellant's accomplice attempted the sale of the television set was admissible as an exception to the hearsay rule as part of the res gestae of the offense committed by appellant. The trial court did not err in admitting this testimony. Point (3) is found to be without merit and is ruled against appellant.

 Under point (4), appellant contends that the trial court erred in regard to the voir dire of the jury panel. Appellant's argument is twofold: (a) the prosecution improperly voir dired the panel on their ability to assess punishment of not less than fifty years, and (b) the court refused to allow appellant to comment on the range of punishment. Respondent counters this argument by pointing out that (1) the questions asked were proper, (2) comment upon the range of punishment in closing argument in a capital murder case is not permitted, and (3) appellant was afforded an opportunity to cure any mistaken impressions created in the jurors' minds by informing them that punishment discussed during voir dire applied only to a charge of capital murder.

During voir dire, the prosecution asked each member of the panel whether he or she would be able to impose the punishment for capital murder (life imprisonment with no parole for 50 years).

Appellant offered no objection to this juror examination. Failure of appellant to object constitutes a waiver of any claim of error relative thereto. *State v. Crawley*, 501 S.W.2d 31 (Mo.1973). The waiver notwithstanding, there was no error because punishment is within the scope of voir dire. *State v. Jackson*, 506 S.W.2d 424, 426–27 (Mo.1974). Appellant's argument under (a) above fails.

Further, under point (4), appellant's principal attack is upon the trial court's refusal to allow appellant leave to discuss in closing argument the full range of punishment relative to each charge submitted, i.e., (b) above. Appellant argues he did not discuss punishment on voir dire because he could not know what lesser and included offenses would be supported by the evidence and subsequently submitted to the jury. Appellant supports his argument by citing § 565.-006, RSMo Supp.1980 and MAI–CR2d 15.00 Notes on Use 9(a). These provide:

565.006:

"1. At the conclusion of all trials upon an indictment or information for capital murder heard by a jury, and after argument of counsel and proper charge from the court, the jury shall retire to consider a verdict of guilty or not guilty without any consideration of punishment ..."

MAI–CR2d 15.00 Notes on Use 9(a) reads:

"If capital murder is submitted to the jury, the punishment for that offense and for any lesser included offense submitted therewith must be omitted, even though the death penalty for capital murder has been waived."

▇▇ The foregoing statute and MAI note do not further appellant's argument. On their face, these provisions refer to *post-argument* submissions and do not encompass voir dire inquiries concerning a juror's capacity to assess a particular punishment. The trial court submitted instructions in conformity with the requirements of the statute and MAI. Appellant contends that since he did not know what charges would be submitted, he made no inquiry on punishment at voir dire. He then attempted to argue range of punishment and when the trial court denied him such argument, he requested a mistrial. The trial court overruled his motion for mistrial. Appellant further asserts that the trial court's refusal to permit him to argue punishment allowed mistaken and incorrect statements of punishment to enter into the deliberations of the jury. Appellant references the mistakes and incorrections upon the voir dire by respondent on punishment. At best, appellant's argument is mere speculation. The prosecution can demand that a venireman be willing to consider all the penalties provided by state law. *State v. Mitchell*, 611 S.W.2d 223, 229 (Mo.banc 1981).

A case similar to the instant proceeding has been presented to this Court where an accused complained of the failure of the instructions to include punishment in a case involving the charge of capital murder and the state had waived the death penalty. In *State v. Reynolds*, 608 S.W.2d 422, 424 (Mo. 1980), this Court declared:

"On this appeal the first complaint of appellant is directed against the instructions submitting capital murder, second degree murder and manslaughter. Appellant's complaint is based upon the absence from those instructions of the punishment which might be imposed for each of the three submitted offenses. Appellant contends that, in view of the reference by the prosecutor on jury voir dire to the range of punishment for each of the offenses, the failure to include that element in the instruction caused the instruction to be 'incomplete, ambiguous and confusing to the jury,' thereby depriving him of his right to a fair jury trial and his liberty without due process of law and the equal protection of the laws."

The instructions in this case followed the dictates of Section 565.006 and MAI–CR2d 15.00 9(a). Whether or not the prosecutor properly referred to punishment on voir dire is not the question presented. *Compare State v. Olinghouse*, 605 S.W.2d 58 (Mo.banc 1980). The fact that reference had been made (without objection) on voir dire would not affect the statutory directive that the issue of guilt be submitted to the jury "without any consideration of punishment". § 565.006.1.

▇▇ Hence, the rule regarding instructions which this Court adopted in *Reynolds* has equal application to the instant case relative to appellant's claim to argue punishment. The rule in *Reynolds* is adopted and made applicable to the prohibition of arguing punishment in cases under a charge of capital murder, whether the death penalty is waived or not. There is another factor in the case at bar, not found within, but which was addressed in the dissent in *State v. Olinghouse, supra*. In the instant case, appellant was afforded opportunity to point out and did in fact point out to the jury in closing argument that punishment of fifty years was applicable only the charge of capital murder.

▇▇ Mistrial is a drastic remedy and should be granted only when prejudice cannot be removed by other remedial methods.

*State v. Jones,* 594 S.W.2d 932, 937 (Mo. 1980). Appellant's complaint is predicated on the jury being allowed to enter its deliberations with incorrect and mistaken statements as to punishment. Under the facts and circumstances of this case, the clarification submitted by appellant was sufficient to cure any error, and it was not error for the trial court to refuse appellant's request for a mistrial. Point (4) is found to be without merit and is ruled against appellant.

■ Under his final point (5), appellant contends that the trial court erred when it instructed the jury on first degree murder because the statutory elements of capital murder did not include all the legal elements of murder in the first degree, and murder in the first degree is not specifically a lesser included offense of capital murder. The evidence upon the record was sufficient to support the submission of murder in the first degree. As to appellant's contention that murder in the first degree is not a lesser included offense of capital murder, this Court has held that failure to instruct on murder in the first degree where the evidence supports the submission of murder in the first degree is reversible error. *State v. Gardner,* 618 S.W.2d 40 (Mo.1981). *See also State v. Wilkerson,* 616 S.W.2d 829 (Mo.banc 1981). The trial court's instruction on murder in the first degree in the instant case was not error. Point (5) is found to be without merit and is ruled against appellant.

The judgment is affirmed.

WELLIVER, P. J., HIGGINS, J., and PREWITT, Special Judge, concur.

SEILER, J., concurs in result.